141 N.J. Super. 164 (1976)
357 A.2d 765
FAR-GOLD CONSTRUCTION CO., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
THE BOROUGH OF CHATHAM, A MUNICIPAL CORPORATION IN THE STATE OF NEW JERSEY, AND THE MAYOR AND COUNCIL OF THE BOROUGH OF CHATHAM, DEFENDANTS-RESPONDENTS, AND BOARD OF ADJUSTMENT OF THE BOROUGH OF CHATHAM, AND THE PLANNING BOARD OF THE BOROUGH OF CHATHAM, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1976.
Decided May 3, 1976.
*165 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Edward J. Buzak argued the cause for appellant (Messrs. Villoresi and Flanagan, attorneys).
Mr. Joel A. Murphy argued the cause for respondents (Messrs. Mills, Doyle, Hock & Murphy, attorneys; Mr. John B. Dangler, on the brief).
PER CURIAM.
At the conclusion of trial without a jury the judge found that plaintiff was not entitled to "constructive condemnation damages" from defendant borough and entered judgment for defendant. Plaintiff appeals. We find no substance to the appeal and affirm.
By a contract dated March 26, 1971 plaintiff agreed to purchase from sellers (hereinafter referred to as Warren) a 16-acre tract of land in the Borough of Chatham, designated as lots 9, 9A and 9B in Block 146 on the borough's tax map, for $500,000, $5,000 of which was then delivered to the purchaser's attorney to be held in escrow, with $195,000 to be paid on closing of title when a $300,000 purchase money note and mortgage was to be delivered.
The purchaser's obligation under the contract was made contingent upon (a) its obtaining all necessary governmental approvals for the construction of a 100,000 square foot shopping center, including a six-court indoor commercial tennis facility; (b) the procurement by the purchaser of firm commitments, "acceptable to the purchaser," from institutional lenders for a construction mortgage and a permanent mortgage, each in the amount of 80% of the estimated value of the land and the proposed improvements; (c) the procurement by the purchaser of satisfactory lease commitments from an AAA-rated tenant for the super-market; (d) the procurement by the purchaser of test borings *166 and a topographical survey showing the proposed construction to be economically feasible. The time granted to plaintiff to satisfy the contingencies was one year from March 26, 1971, the date of the agreement, unless the purchaser was at that date actively engaged in litigation "pertaining to the zoning status of the premises." in which case the contingency date would be extended to 120 days after the final determination of such litigation.
The 16-acre tract extended from Main Street in Chatham to the Passaic River. Lot 9, a 13.65-acre tract, was zoned residential; lots 9A and 9B, an area of 2.35 acres, were zoned "business-commercial." On February 18, 1972 plaintiff filed an application with the board of adjustment in an attempt to obtain recommendation of a use variance. After a series of hearings that application was denied on October 25, 1972.
On December 7, 1972 plaintiff filed a complaint in lieu of prerogative writs against the Borough of Chatham, its governing body, board of adjustment and planning board. The complaint was in four counts. The first count sought a determination that the board of adjustment's denial of the use variance was arbitrary and unreasonable. The second count attacked as invalid a provision of the zoning ordinance requiring that "a plot proposed to accommodate three or more buildings * * * shall be bounded on two or more sides by public streets, parks or other permanent open space * * *." The third count, after repeating the allegations of the prior counts, alleged that the borough council had adopted a resolution on September 11, 1972 authorizing the filing of an application with the Department of Housing and Urban Development for a grant of $252,892 to be used for the purchase of Block 146, Lots 9, 9A and 9B, and that the adoption of such resolution in effect constructively condemned plaintiff's property. The count prayed a declaration that the resolution is null and void and that a constructive condemnation had taken place from September 11, *167 1972 until the date the resolution is nullified. The fourth count sought to set aside the Planning Board's disapproval of plaintiff's site plan application.
After answers were filed, an order was entered on February 6, 1973, on plaintiff's application, staying the proceedings for six months or until such time as the borough's application for Green Acres funds received final action by the Department of Housing and Urban Development, whichever occurred sooner.
The issues raised by the first, second and fourth Counts, involving the denial by the board of adjustment of a recommendation for a use variance, the bulk provision of the zoning ordinance and the planning board's disapproval of a site plan application, were tried and decided adversely to plaintiff on October 7, 1974. A formal order so providing was entered on November 1, 1974. Plaintiff's appeal does not challenge the correctness of those rulings.
Its appeal is only from the order entered March 27, 1975, after a trial held on March 19, 1975. That order rejected plaintiff's claim that there had been a constructive condemnation of its interest in Lots 9A and B, the 2.35-acre tract zoned commercial, during the period from September 11, 1972 (when the borough had adopted two resolutions authorizing that applications be made for a State grant of $245,000 and a Federal grant of $252,892 to enable it to consummate its desire to acquire and develop the entire 16 acres of the Warren property for "parks, recreation and conservation purposes") until June 17, 1974 (when the borough filed a condemnation complaint to acquire Lot 9, the 13.65-acre tract zoned residential "and use the same in accordance with municipal recreation programs and open space uses consistent with flood plain considerations").[1]
*168 Plaintiff, citing Lomarch Corp. v. Englewood, 51 N.J. 108 (1968), Beech Forest Hills, Inc. v. Morris Plains, 127 N.J. Super. 574 (App. Div. 1974) and Washington Market Enterprises v. Trenton, 68 N.J. 107 (1975), in alleged support of its argument, contends that the adoption of the September 11, 1972 resolutions evidencing the Borough's desire to acquire the entire 16 acres effectively "froze" plaintiff's ability to deal with or dispose of the 2.35-acre part thereof until the filing of the complaint for condemnation of only the 13.65-acre tract, so that the 2.35-acre tract had been constructively condemned during that period.
The argument lacks substance. None of the cited cases support it. The factual complex in Washington Market Enterprises, supra, does not even faintly resemble that in this case.
Lomarch Corp., supra, involved the interpretation of N.J.S.A. 40:55-1.32, a section of the Official Map and Building Permit Act (1953), N.J.S.A. 40:55-1.30 et seq. That section authorizes a municipality to establish, by ordinance, an official map showing designated public land uses and then, upon application by a landowner for approval of a plat of his land, to reserve for a period of one year, for future public use, such portion of the owner's land as is designated on the official map for use as a public park or playground. Lomarch held that the statute granted the municipality an "option" to purchase the reserved portion of the owner's land for a period of one year, and concluded that
* * * the "option" for the purchase of land upon the unilateral action of the municipality without any consensual action of the landowner, was statutorily granted to the municipality only upon the implied duty and obligation to make payment of adequate compensation to the landowner for the temporary taking and his deprivation of use.
Beech Forest Hills, Inc., supra, involved a substantially identical provision in a section of the Planning Act, viz.:
*169 * * * The governing body or the planning board shall be permitted to reserve the location and extent of school sites, public parks and playgrounds shown on the master plan or any part thereof for a period of one year after the approval of the final plat or within such further time as agreed to by the applying party. * * * [N.J.S.A. 40:55-1.20]
The situation here presented is not comparable. Adoption of the September 1972 resolutions expressing the borough's desire to acquire the Warren tract for park purposes and authorizing applications for state and federal funds with which to accomplish that desired result had no legal impact on the ownership, possession or use of the Warren tract. No option was created thereby nor did it result in an actual, substantial destruction of beneficial use. Those holding an interest in the property were as free to deal with or dispose of it as they were before the resolutions were adopted.[2]
The borough's resolutions, embodying its decision to seek state and federal funds, constituted only planning in anticipation of a public improvement. Such planning, without physical appropriation or interference, does not constitute a compensable taking or make out a case of constructive condemnation. Kingston East Realty Co. v. State of N.J., 133 N.J. Super. 234, 239 (App. Div. 1975); E. Rutherford Industrial Park v. State, 119 N.J. Super. 352 (Law Div. 1972); Annotation, "Condemnation-Preimprovement Planning," 37 A.L.R.3d 127 (1971).
The judgment is affirmed.
NOTES
[1] In fact, plaintiff had learned by March or April 1973 that the borough planned to acquire only the 13.65-acre tract zoned residential, this because, while the borough had received Green Acre funds, federal funds were unavailable to it.
[2] Indeed, it may be noted that on April 15, 1975, during the pendency of the condemnation proceedings instituted in June 1974, the entire property was sold and conveyed by the Warrens to a Peter Grant, an assignee of plaintiff Far-Gold Construction Co. The record does not disclose the amount paid for the conveyance.