851 A.2d 62 (2004)
370 N.J. Super. 239
Juanita MANGO, Plaintiff-Appellant,
v.
Katherine PIERCE-COOMBS, Defendant, and
M. Streets Cesspool Service, Pierce Construction, Turner Dean Century 21 Realty and Mary Dean, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 19, 2004.
Decided June 24, 2004.
*65 Cris D'Arrigo, Bridgeton, argued the cause for appellant (D'Arrigo & D'Arrigo, attorneys; Mr. D'Arrigo, on the brief).
Deana L. Walsh, argued the cause for respondent M. Streets Cesspool Service (Jacob & Chiarello, attorneys; Ms. Walsh, on the brief).
Kevin M. Stankowitz, Oakhurst, argued the cause for respondents Turner Dean Century 21 Realty and Mary Dean (Widman, Cooney & Wilson, attorneys; Mr. Stankowitz, on the brief).
David F. Raczenbek, Bridgeton, argued the cause for respondent Warren Pierce, Jr. (designated in caption as Pierce Construction) (Casarow, Kienzle & Raczenbek, attorneys; Mr. Raczenbek, on the brief).
Before Judges KING, LINTNER, LISA. *63
*64 The opinion of the court was delivered by LISA, J.A.D.
Plaintiff, Juanita Mango, appeals from a summary judgment dismissing her complaint against defendants, McClaren Streets, doing business as M. Streets Cesspool Service (Streets), Turner Dean Century 21 Realty and Mary Dean (Dean), and Warren Pierce, Jr. (designated in the pleadings as Pierce Construction) (Pierce). Plaintiff's claim arises out of her purchase of a previously owned and occupied home. Dean served in the capacity of a dual real estate agent. The agreement of sale required a septic system certification. At Mango's request, Dean arranged for an inspection and the issuance of the certification. Dean selected Streets for this purpose. The buyer and seller consummated settlement. Shortly thereafter, the septic system malfunctioned. Mango hired Pierce to perform remedial work, but terminated her agreement with him and hired a different contractor to complete the job. Plaintiff's complaint seeks damages for the cost of replacing the septic system, and other related costs, on theories against the various defendants of breach of contract, common law fraud, and violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to - 106(CFA).[1]
*66 On appeal, plaintiff argues: (1) the trial court erred in concluding that Streets did not make any representation to plaintiff, and summary judgment was improperly granted to Streets because plaintiff made out a prima facie showing of consumer fraud and common law fraud against him; (2) summary judgment was improperly granted to Dean, because plaintiff made a prima facie showing that Dean was negligent and breached a fiduciary duty to plaintiff in selecting Streets for the septic inspection and certification; (3) summary judgment was improperly granted to Pierce, because the issue of delays by Pierce in performing the construction work was a jury issue; and (4) the trial judge erred in rendering her decision on the summary judgment motions before completion of discovery. We agree with plaintiff's argument with respect to the CFA claim against Streets, and we remand for trial on that issue. We reject plaintiff's remaining arguments, and in all other respects affirm the summary judgment order.

I
Desiring to sell her home, defendant Katherine Pierce-Coombs contacted Darlene Williams, an employee of Dean, for assistance. Williams listed the home in early June 2000. She conducted a walk-through of the property with Pierce-Coombs on June 7, 2000. In connection with the listing, Pierce-Coombs completed a "Property Owner Disclosure Statement," on which she provided a negative answer to the question, "Do you know of any problems relating to the Septic Tank or Cesspool or sewer system?" At about the same time, Mango contacted Mary Dean expressing her interest in purchasing a home. On June 8, 2000, Mary Dean showed the home to Mango. Mango made an offer on the property the next day.
On June 10, 2000, Mango and Pierce-Coombs signed a sales agreement for the price of $124,000.00. In a "Proposal to Purchase Memorandum," Pierce-Coombs agreed to provide a satisfactory septic certification. The sales agreement provided similar assurances. Specifically, the agreement stated:
The SELLER will pay for a currently-dated satisfactory septic certification to be issued by a licensed plumber or a qualified septic service company of the BUYERS choice. In addition, the SELLER will pay to have the septic system pumped out by a qualified septic system service company if such is required in order for the certification to be issued. Should the inspection of the septic system reveal any problems that the SELLER is unwilling to correct, the BUYER/SELLER may choose to declare this contract null and void and of no further effect. If either party agrees to pay to correct any problems, the other party cannot cancel this contract under this paragraph.
Although this provision allowed Mango to choose the party to provide the certification, Mango deferred the choice to Dean. On June 30, 2000, Dean contacted Streets *67 for this purpose. McClaren Streets, the principal employee of Streets, had been in the septic system business for approximately forty-three years. Dean utilized his services several times a month to conduct inspections and issue certifications regarding septic systems in conjunction with real estate sales. No permit or license is required to perform these services, but Streets was the holder a DEP permit to haul waste.
On July 5, 2000, Streets and his assistant came to the property, located and uncovered the septic tank, and pumped it down to observe whether any water came back from the field bed. Because no water came back, they did not dig up the distribution boxes or field beds. Streets had Pierce-Coombs flush a toilet in the house, and concluded the system was flowing suitably. According to Streets, "all these tests were OK and nothing was wrong which indicated to me that the tank and system were in working order." Streets takes the position that he ordinarily does not inspect the entire field. If water is coming back into the tank, he will not certify the system. Instead, he will send someone else to dig up the field.
After completing his inspection, Streets provided a document entitled "Septic System Certification," which states:
On the above date the Septic Tank at the above named property was pumped and inspected. The Septic Tank and Septic System appeared to be in working order on this date.
This Certification for the Septic System is for the date of inspection only. The Certification shall not survive the sale of the said property, nor shall this Certification be effective unless both the Seller and the Buyer sign same at the bottom of this Certification.
NO WARRANTIES OR GUARANTIES ARE MADE AS TO THE CONDITION NOR THE CONTINUED WORKING ORDER OF THE FIELD BED, CONNECTING PIPES NOR THE SEPTIC TANK.
The closing occurred on July 28, 2000. During the weeks following her return from vacation, in late August or early September, Mango began to experience problems with the septic system. She contacted Dean, who in turn contacted Streets, who returned to the property on September 6, 2000 and re-pumped the tank. This proved to be only a temporary solution, and on November 13, 2000, Mango had the property inspected by another contractor, FAVS Corp. This contractor concluded that a new field bed needed to be installed. In performing its inspection and making its analysis, FAVS performed the following work:
Entire system was located and uncovered. Water was found to be over baffles and [distribution box] lid. Pipes in [distribution box] were completely clogged. System was pumped and pressure washed, including field drain lines. System was treated with 15 gallons of septic treatment to assist in clearing clogged lines. System was flushed with water and monitored. On six separate occasions system was inspected. At no time was water level any lower than 2 inches from top of field drain lines. This is an indication that the fieldbed is perking slightly but not adequately for a 2 bedroom dwelling.
To remedy the situation, Dean recommended to Mango that she call Pierce, who is in the business of installing septic systems and performing excavating work. On April 13, 2001, Pierce informed Mango that it would cost $2,500 to replace the drain field bed. Mango agreed, and Pierce began the work on April 17, 2001, after receiving a $1,200 payment from Mango. According to Mango, Pierce "came onto *68 my property and dug up the front yard... and piled up all the dirt around the system." After Pierce's commencement of the work, an official from the Cumberland County Health Department inspected the system and informed Mango that the septic system needed to be redesigned.
On May 8, 2001, Mango entered into an agreement with Johnson Design Associates to perform the re-design work. The drawings were picked up and ready for Pierce to begin the installation of the redesigned field bed on May 18, 2001. As required by the re-design plans, Pierce delivered and unloaded additional dirt to the site. This occurred on May 25, 2001, at which time Mango made an additional payment of $1,050. However, within approximately the next week, Mango unilaterally terminated her contract with Pierce and decided to obtain the services of another contractor to complete the work. She did so, and the new contractor completed the work within about one week.
On the last day of discovery, Mango obtained an expert report from Sandford S. Mersky, P.E., of South Jersey Engineers, LLC. In a detailed five-and-one-half page single-spaced report, issued November 5, 2002, Mersky criticized the procedures used by Streets in conducting his inspection as being totally inadequate. Mersky explained the design and functioning of a septic system, including its various component parts. He explained the usual causes of system failure and the methods utilized by an inspector to determine the source of the problem. He explained that the property owner should be presented with a complete and detailed report of findings and opinions. He opined that:
[T]he septic "certification" offered by M. Streets Cesspool Service is typical of a "store bought" certification which is all too prevalent during property transfers. The documents offers [sic] no details as to what, if anything was tested or observed, or how Mr. Streets came to the conclusion that the system was functional. It would appear that Mr. Streets simply pumped the tank (which would have precluded a proper inspection), and subsequently issued his `certification' for an additional $100.00 payment.
Mersky opined that the system was in a state of failure when inspected by FAVS on November 21, 2000, and the conditions described at that time were the result of a long period of non-maintenance or system abuse, "nothing that would have occurred from the date of Mango's occupancy until the testing date." Mersky found that plans for a new septic system as proposed by Johnson Engineering "provide the only acceptable solution in this matter."

II
In deciding a motion for summary judgment, the trial court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the nonmoving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146, 156 (1995). This court's standard of review mirrors that of the trial court: whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law. Kopin v. Orange Prods., Inc., 297 N.J.Super. 353, 366, 688 A.2d 130, 136 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997); McClelland v. Tucker, 273 N.J.Super. 410, 415, 642 A.2d 409, 412 (App.Div.1994).

A.
We first address plaintiff's contention that she should have survived summary judgment with respect to her consumer *69 fraud and common law fraud claims against Streets. In analyzing these claims, the motion judge focused on the literal wording of Streets' certification, which limited its effect to the day of the inspection, July 5, 2000. With respect to the consumer fraud claim, the judge recognized that, within the context of this case, plaintiff must demonstrate an affirmative misrepresentation by Streets, that is, a statement of fact found to be false, made to induce her to make the purchase. The judge then stated:
There is no evidence that what Mr. Streets did was done by him to induce the buyer to make the purchase. And so for that reason, the consumer fraud allegation fails even if one were to conclude that there is an affirmative misrepresentation. However, what Streets did and what his testimony in deposition is that he would typically do in situations such as this, is to perform an inspection on part of the system. And in that context, make conclusions as to the workability of the system at that time, on that day, and on that day only.
So there's no evidence that his conclusion that the system worked that day is false. It may be based on some finding down the road in November that the argument can be made that it must have been bad on that day, but there's no real evidence that it was bad that day, hence, making the statement false. So the existence of a misrepresentation is not satisfactorily established for purposes of this motion.
And the existence of the inducement under the Consumer Fraud Act is not satisfactorily established for purposes of this motion.
"Any person who suffers any ascertainable loss of moneys or property" as a result of an "unconscionable commercial practice," may bring an action for relief under the CFA. N.J.S.A. 56:8-2, -19. Unconscionable commercial practices, including "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact" with the intent that others rely on the concealed fact, are unlawful. N.J.S.A. 56:8-2; Skeer v. EMK Motors, Inc., 187 N.J.Super. 465, 455 A.2d 508 (App.Div.1982). The phrase "unconscionable [commercial] practice" has been defined as a violation of "[t]he standard of conduct contemplat[ing] ... good faith, honesty in fact and observance of fair dealing." Kugler v. Romain, 58 N.J. 522, 544, 279 A.2d 640, 652 (1971). The term is fact-specific and applied on a case-by-case basis. Id. at 543, 279 A.2d at 651.
The CFA covers both affirmative acts and omissions. Strawn v. Canuso, 140 N.J. 43, 60, 657 A.2d 420, 429 (1995). As applicable in this case, an affirmative misrepresentation is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Ji v. Palmer, 333 N.J.Super. 451, 462, 755 A.2d 1221, 1228 (App.Div.2000) (citation omitted). A statement is material if:
(a) a reasonable person would attach importance to its existence in determining a choice of action ...; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.
[Id. at 462, 755 A.2d at 1228 (quoting Restatement (Second) of Torts § 538(2) (1977)).]
Affirmative acts do not require a showing of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 605, 691 A.2d 350, 365 (1997).
*70 Streets argues that he did not make an affirmative misrepresentation because he did not make a "statement of fact, found to be false." Support for this argument comes from the language used in his certification, such as "[t]his Certification for the Septic System is for the date of inspection only," and, "[t]he Certification shall not survive the sale of the said property." Streets points to the lack of evidence that the system was not working on the date it was tested. The judge accepted this argument. We are not persuaded that the literal wording of the certification, in the context in which it was issued, is dispositive.
About a year after this motion was decided in the trial court, we decided Lucier v. Williams, 366 N.J.Super. 485, 841 A.2d 907 (App.Div.2004). In that case, we considered the enforceability of a limitation of liability provision in a home inspection contract. Id. at 488, 841 A.2d at 908. We held that the provision was "unconscionable, in contravention of public policy, and is therefore unenforceable." Ibid. In Lucier, a home buyer engaged the services of Cambridge Associates, Ltd. (CAL) to perform a home inspection. Ibid. Among the "unfair and confusing" language read by the home buyer, the contract stated that any damages "arising out of this Agreement from any cause or causes shall not exceed the total amount of $500, or 50% of fees actually paid to CAL by Client, whichever sum is smaller." Id. at 489, 841 A.2d at 909. CAL issued a favorable home inspection report, but soon after the buyers took possession, the roof of the house began to leak, indicating the existence of a defect overlooked by CAL. Id. at 490, 841 A.2d at 910.
We deemed the limitation of liability provision unenforceable. Our reasons included that it was "contrary to our state's public policy of effectuating the purpose of a home inspection contract to render reliable evaluation of a home's fitness for purchase and holding professionals to certain industry standards." Id. at 493, 841 A.2d at 912. A home inspection report should "reveal and report conditions which may, presently or in the reasonably foreseeable future, cause the consumer substantial inconvenience or require costly repairs or maintenance expense." Id. at 495, 841 A.2d at 913 (quoting Herner v. HouseMaster of Am., 349 N.J.Super. 89, 106, 793 A.2d 55, 66-67 (App.Div.), certif. denied, 174 N.J. 40, 803 A.2d 636 (2002)). Exculpation clauses are particularly disfavored with professional service contracts. Id. at 496, 841 A.2d at 914.
Although septic system inspection services are not covered by the Home Inspection Professional Licensing Act, N.J.S.A. 45:8-61 to -77, the rationale we expressed in Lucier is applicable to Streets' Septic System Certification, particularly the provision limiting the effect of the certification to the day of testing. Such a limitation obliterates the purpose for which Streets was hired to conduct the inspection and issue a certification. It was, of course, obvious that the purpose of the certification was to provide guidance to the prospective purchaser on the suitability and good working order of the septic system after the buyer would take title and possession. Streets was engaged by a realtor, and the wording of his certification indeed refers to the "sale of the said property" and makes reference to "the Seller and Buyer." Thus, the situation here is the same as that which existed for the home buyers in Lucier, namely that the buyer sought a reliable evaluation as to whether the septic system would work in the reasonably foreseeable future.
The provision in Streets' certification limiting its effect to July 5, 2000 must be eliminated as unconscionable and unenforceable. *71 Thus, the reformed certification must be deemed to provide that the septic system is suitable in the reasonably foreseeable future. The critical issue for summary judgment analysis thus becomes whether a jury issue is presented as to whether Streets made a "statement of fact, found to be false," in the reformed certification. Viewing the evidence most favorably to Mango, and giving her the benefit of all inferences that could be reasonably drawn in her favor, we are satisfied she has made a prima facie showing that the septic system was not in good working order in the reasonably foreseeable future after Streets' certification was issued. At the very least, Mersky's expert report supports a jury issue that Streets' inspection was not properly done and that the septic system was not in good working order when Streets performed his inspection or in the reasonably foreseeable future thereafter. We therefore direct that plaintiff's CFA claim against Streets be remanded for trial, along with plaintiff's pending claim against the seller of the home, Katherine Pierce-Coombs.
In order to establish a claim for common law fraud, one must show:
(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.
[Gennari, supra, 148 N.J. at 610, 691 A.2d at 367 (citation omitted).]
The motion judge found there was no evidence to support plaintiff's contention that Streets knew or believed that his statement regarding the good working order of the septic system was false. We agree. Even if the statement proved, in the future, to be false, the motion record contains no evidence of Streets' knowledge of its falsity. Therefore, the judge correctly dismissed plaintiff's common law fraud claim against Streets.

B.
Mango claims that Dean committed consumer fraud by directing her to hire Streets. She alleges that Dean and Streets had an arrangement in which Streets would conduct inadequate tests of septic systems, yet certify the systems to be in good working order, to "facilitat[e the] transactions with the least amount of problems." The motion judge rejected this contention, finding there was a lack of evidence to support the claims. We agree.
Under the CFA, a real estate broker representing a seller may be liable for non-disclosure of a defective condition if the condition was known to the broker but not readily observable to the buyer. Strawn v. Canuso, supra, 140 N.J. at 58-59, 65, 657 A.2d at 427-28. To prove consumer fraud, a plaintiff must show that the realtor intentionally concealed the information about the defect with the intention that its client would rely on the concealment, and that the information was material to the transaction. N.J.S.A. 56:8-2; Fenwick v. Kay Am. Jeep, Inc., 72 N.J. 372, 377, 371 A.2d 13, 15-16 (1977); Leon v. Rite Aid Corp., 340 N.J.Super. 462, 469, 774 A.2d 674, 678 (2001). While a broker may be liable under the CFA for failure to disclose a material fact, the client must demonstrate that the broker had that knowledge.
Here, Mango alleges that Dean entered into a fraudulent relationship with Streets, by which Streets conducted cursory inspections and issued certifications stating the septic systems of houses sold by Dean were working properly, when, in fact, the inspection did not truly test the suitability of the septic system. Instead, Streets *72 would allegedly rubber stamp the certification in order to more smoothly effectuate a sale, resulting in a commission for Dean.
However, Mango has failed to provide any evidence that Dean had knowledge of any defect with the septic system. All that Mango offers as support is the fact that Darlene Williams, an employee of Dean and the listing agent for Pierce-Coombs, is a niece of Pierce-Coombs' second husband. However, Mango has failed to produce any other evidence to suggest that any employee of Dean, including Darlene Williams and Mary Dean, knew of any problems with the septic system. Further, under the terms of the sale agreement, the buyer has the option of choosing the septic system certifier. In this case, Mango deferred to her realtor, Dean, to make the choice.
In her brief, Mango argues that the relationship between Dean and Streets is analogous to that found in Herner v. HouseMaster of Am., Inc., 349 N.J.Super. 89, 793 A.2d 55 (App.Div.), certif. denied, 174 N.J. 40, 803 A.2d 636 (2002). In Herner, the home buyer sued a home inspection company under the CFA for failing to provide an adequate home inspection report. Id. at 95, 793 A.2d at 58. The buyer pointed to the relationship between the home inspection company and the realtor. The realtor in Herner was a "customer in fact" of the home inspection company. Id. at 106, 793 A.2d at 67. We stated in Herner,
Eighty percent of [the home inspection company's] business comes from realtors. It conducts seminars for them to explain its services. Its informational brochures are left with the realtor to distribute to prospective buyers. At the same time it is undisclosed to the consumer that [the home inspection company] insures the realtor against liability for a faulty inspection, coverage which is not provided the consumer. By specific training, it would also go undisclosed that a particular inspector had done a number of inspections for a realtor. [The home inspection company]'s worst nightmare is to become known in the real estate brokerage industry as a "deal-killer."
[Id. at 106-07, 793 A.2d at 67.]
In this case, there is no evidence that Dean and Streets had entered into a suspicious relationship such as that found in Herner. Streets conducts several inspections and certifications per month for Dean. This fact, standing alone, is not sufficient to establish a fraudulent relationship. Streets receives $100 per inspection. In the course of conducting the inspections, he also pumps the tank, for which he charges approximately $125. The frequency of contact and the amount of money involved, without any other evidence of an improper scheme between Dean and Streets, are not sufficient to prove an unconscionable commercial practice.
Mango also claims that Dean breached a fiduciary duty to her by negligently selecting Streets to perform the septic system evaluation. The motion judge found there was no evidence to support the negligent hiring theory, noting that Streets had been in the business for forty-two years and was apparently reputable and operating at arms length with Dean. We agree with this conclusion.
A fiduciary duty exists between a real estate broker and her client. "The broker ... is looked upon as a fiduciary and is required to exercise fidelity, good faith and primary devotion to the interests of his principal." Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 553, 236 A.2d 843, 856 (1967) (citations omitted). Included in this duty is the duty of full disclosure. Remer v. Fox, 141 N.J.Eq. *73 430, 431, 57 A.2d 918, 919 (Ch.1948). Based upon the motion record, any contention that Dean had knowledge of any deficiency in the septic system, or had any reason to believe that Streets was not a reputable septic system contractor, is speculative. There was no breach of fiduciary duty and no evidence to support a negligent hiring claim.

C.
Plaintiff argues that the motion judge improperly dismissed her claim of breach of contract against Pierce. Plaintiff contends that whether Pierce commenced work within a reasonable time frame after the field bed was redesigned is a jury question, not one for the judge to decide on summary judgment.
Generally, when the terms of a contract are clear, the construction and effect of the contract is a matter of law which must be resolved by the court and not the jury. Cedar Ridge Trailer Sales, Inc. v. Nat'l Cmty. Bank of N.J., 312 N.J.Super. 51, 62-63, 711 A.2d 338, 343-44 (App.Div.1998). When the contract lacks a time limit, "by implication a reasonable time was intended." Becker v. Sunrise at Elkridge, 226 N.J.Super. 119, 129, 543 A.2d 977, 983 (App.Div.), certif. denied, 113 N.J. 356, 550 A.2d 465 (1988). The determination of a reasonable time "is usually an implication of fact, and not of law, derivable from the language used by the parties considered in the context of the subject matter and the attendant circumstances, in aid of the apparent intention." Borough of West Caldwell v. Borough of Caldwell, 26 N.J. 9, 28, 138 A.2d 402, 412 (1958). Whether conduct constitutes a breach of contract and, if it does, whether the breach is material are ordinarily jury questions. Magnet Res., Inc. v. Summit MRI, Inc., 318 N.J.Super. 275, 286, 723 A.2d 976, 981 (App.Div. 1998).
In order to defeat a motion for summary judgment, a party has the burden of proof to show that a reasonable time has expired by adducing evidence from which a reasonable jury could conclude that the moving party breached its contractual duty to complete the work within a reasonable time. Black Horse Lane Assoc. v. Dow Chem. Corp., 228 F.3d 275, 285 (3d Cir. 2000) (reviewing New Jersey contract law).
Although it is presumed that the reasonable time issue is a fact question for the jury, the motion judge properly disposed of the issue by granting Pierce's summary judgment motion. The judge was unpersuaded by plaintiff's contention that Pierce materially breached the contract by failing to finish the job in a reasonable time frame. The judge found that no jury issue was presented:
My conclusion is that faced with a delay of one week after the plans were delivered, and I'm using the May 18th date for the delivery of the plans, and the May 25th date on which, apparently, Mr. Pierce did go back and begin some additional work, is not an unreasonable period of time, particularly when one takes into account that there are weekend days and a holiday involved in that calculation.
And so under the Brill standard, my conclusion is that there is but one conclusion that a reasonable jury could reach in that connection, and that is that that delay period is not unreasonable. And to the extent that there is, excepting the plaintiff's calculation that there is another one-week period of delay as well, again, I'm hard-pressed to say that under these circumstances with the involvement of an engineer, and perhaps the need to have the engineer reinspect or certify before the job could be concluded, that really for a jury to conclude that that is unreasonable is a very far *74 stretch. And my view of it is, that there is but one conclusion that would answer that potential question of fact, and that is that it's not unreasonable.
So for those reasons, on the breach of contract theory against Pierce, I'm not satisfied that the plaintiff can sustain a cause of action, and I will grant summary judgment in favor of Warren Pierce for the reasons that I've stated.
We agree with the judge's analysis and affirm dismissal of plaintiff's claim against Pierce substantially for the reasons she stated.

III
Finally, we address the discovery issue. Plaintiff claims she was prejudiced because she was unaware the court granted Streets' motion to quash a subpoena and extend discovery. We find this argument unpersuasive because the circumstances had no effect on the outcome of the case.
Before arguments commenced on the summary judgment motions, the judge reminded the parties about a previously-filed motion to quash a subpoena to the wife of McClaren Streets filed by Streets' counsel. The judge had granted the motion on December 20, 2002, two months before the motion hearing date of February 21, 2003, but had failed to notify the parties of her decision. The judge also decided to extend discovery for ninety days to March 20, 2003, to help alleviate the hardship caused by plaintiff's last minute service of its expert report. The judge stated, "The defendants are to provide expert reports within 30 days of the date of the order.... And any additional fact witnesses should be deposed within 30 days thereafter, and the experts to be deposed 60 days after that."
Generally, the disposition of discovery issues is within the trial court's discretion. Smith v. Estate of Kelly, 343 N.J.Super. 480, 503, 778 A.2d 1162, 1176 (App.Div.2001). Rule 4:24-1 governs the time for completion of discovery. The parties may consent to extend the time for discovery for an additional sixty days. R. 4:24-1(c). If a longer extension is sought, a motion for relief shall be filed, and the court may, "for good cause shown," permit the extension. Ibid.
The extension of discovery at issue here was the second such extension. The first occurred on September 13, 2002, when the judge extended discovery for a period of sixty days, ending November 5, 2002. The second extension was granted in the court's discretion, not as of right. The purpose of the second extension was to alleviate the hardship to defendants caused by the plaintiff's last-minute production of her expert report. The judge did not grant the extension to assist the plaintiff in any way. Therefore, had the extension not been granted, the outcome of the summary judgment motions would have been the same. As a result, being precluded from further discovery did not unduly prejudice plaintiff. We find no abuse of discretion in the judge's ruling on this issue.

IV
The summary judgment order entered on March 7, 2003 is reversed insofar as it pertains to plaintiff's CFA claim against Streets, and the matter is remanded for trial of that claim. In all other respects, the March 7, 2003 summary judgment order is affirmed.
Affirmed in part; reversed and remanded in part; we do not retain jurisdiction.
NOTES
[1] The seller of the home, Katherine Pierce-Coombs, is also a defendant. The claim against her has never been disposed of in the trial court and remains pending. In plaintiff's notice of appeal and case information statement, she stated that although all issues as to all parties have not been disposed of, a certification of final judgment pursuant to Rule 4:42-2 was issued. The record is devoid of any such certification. Therefore, the summary judgment order that is the subject of this appeal is interlocutory in nature and is not properly before us. R. 2:2-3(a). In the interest of disposing of the substantive issues raised on appeal, we grant leave to appeal nunc pro tunc. See R. 2:2-4.