990 A.2d 667 (2010)
412 N.J. Super. 298
NEW JERSEY SCHOOLS CONSTRUCTION CORPORATION, a subsidiary of the New Jersey Economic Development Authority, a public body corporate and politic, Plaintiff-Appellant,
v.
David LOPEZ and the City Of Union City, a municipal corporation of the State of New Jersey, Defendants-Respondents, and
Universal American Mortgage Company, Valley National Bank, and Crusader Servicing Corporation, Defendants.
DOCKET NO. A-4732-07T2.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 2010.
Decided February 19, 2010.
*669 George P. Ljutich, Deputy Attorney General, argued the cause for appellant (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel and on the brief; Dale Laster Lessne, Deputy Attorney General, on the brief).
Scott A. Heiart, Florham Park, argued the cause for respondent David Lopez (Carlin & Ward, P.C., attorneys; William J. Ward, of counsel and on the brief; Mr. Heiart and Adam Karczewski, on the brief).
Jacquelin P. Gioioso, Lyndhurst, argued the cause for respondent City of Union City (Scarinci Hollenbeck, attorneys; Ms. Gioioso, on the brief).
Before Judges PARRILLO, LIHOTZ and ASHRAFI.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In this condemnation action involving property located at 1501 Palisade Avenue, Union City, plaintiff, New Jersey Schools Construction Corporation (plaintiff or SCC),[1] challenges certain rulings of the Law Division on in limine motions: (1) determining that the value of the improvements to the property made after the owner, defendant David Lopez, received a notice of interest (NOI) letter from plaintiff are included in setting just compensation; (2) excluding evidence attacking the validity of variance and site plan approvals issued by the Union City Zoning Board of Adjustment (Zoning Board); and (3) holding that defendant had no obligation to inform the Zoning Board of his receipt of the NOI letter. The case below focused on the question of whether defendant and his agents had knowledge of the imminent condemnation of the property, and with that knowledge constructed a building on the property for the sole purpose of enhancing the condemnation award. Following the ruling on plaintiff's last in limine motion, memorialized in an order of March 12, 2008, the parties negotiated a settlement, which provided that plaintiff pay $1,825,000 as just compensation for the property. As part of the settlement, plaintiff reserved the right to appeal the Law Division's interlocutory rulings, including the latest embodied in the March 12, 2008 order. On April 25, 2008, the Law Division judge entered a consent order for final judgment memorializing the settlement, from which plaintiff now appeals.
Some background is in order. When defendant and his two brothers bought the property in 1996, the structure that once stood there had already been torn down. The plan was to erect a new building, but in the meantime to use the lot for parking spaces. So until construction of the new *670 building commenced in 2003, the property was used as a parking lot. The Lopez brothers' first attempt to develop the property was in November 1999, when the Union City Planning Board denied their application to construct a three-story mixed residential/commercial structure because a use variance from the Zoning Board was required. The matter was abandoned for lack of financing.
The next attempt in 2003 was more successful, eventually resulting in a three-story structure consisting of a dental office and four-car garage on the first floor, and four apartments on the second and third floors. Each floor consisted of 2500 square feet and the building covered one hundred percent of the lot. Title was placed in defendant's name on April 24, 2003, in order to secure financing because he enjoyed the best credit rating of the three brothers. Another brother, Daniel, managed construction of the improvements to the property. The third brother, Samuel, a licensed dentist, planned to reside at the property and use the ground floor for his dental practice. Their parents lived in a home next door.
An architect was hired in March 2003 and prepared site plans dated May 22, 2003. On April 25, 2003, the Union City Planning Board again rejected defendant's development application because a use variance was required, and advised that defendant must go before the Zoning Board. On April 30, 2003, defendant retained an attorney to prepare a zoning application. On June 3, 2003, defendant applied for site plan approval and variances for the property.
Defendant's property sits adjacent to the Christopher Columbus Middle School, in the Union City School District (School District), a designated "Abbott District."[2] On March 15, 1999, the facilities management plan for the School District, which called for construction of a new school and acquisition of other adjacent lots, did not contemplate use of the Lopez property. However, a later plan, adopted at the December 6, 2002 meeting of the New Jersey Economic Development Authority, did call for the use of defendant's lot. On December 18, 2003, the Union City Board of Education approved the site acquisition of adjacent lots, including defendant's, for construction of a new school. On February 5, 2004, the Board of Education sought the approval of the SCC, the State agency charged with the responsibility of implementing the State's school construction program under Abbott v. Burke, supra.
Meanwhile, on August 27, 2003, plaintiff wrote a NOI letter to defendant at 1501 Palisade Avenue, stating that plaintiff was considering the property for development of a school facility.[3] It also stated: "This letter does not represent an offer on the part of NJSCC to purchase your property, as no final decision to acquire your property has been made at this time." The letter indicated that plaintiff was seeking to exercise its right of preliminary entry onto the property to conduct an engineering and site feasibility investigation, which would include surveys, soil sampling, underground storage tank investigations, and soil borings.
After discussing the NOI letter with his attorney, defendant was advised to proceed with the zoning application because *671 there were a number of such notices being sent around and there was no way of knowing whether any legitimate condemnation proceedings would evolve. The attorney did not inform defendant that he had an obligation to disclose the NOI letter to the Zoning Board. Architect Feld also saw the NOI letter and did not advise defendant to stop construction.
On September 11, 2003, less than two weeks after receipt of the NOI letter, defendant's application before the Zoning Board proceeded to a public hearing, at which no objection was voiced. The Board voted to approve the application with the proposed variances.[4] On October 9, 2003, the Board passed a resolution of findings and conclusions memorializing the approval.
On November 26, 2003, the Zoning Board granted a construction permit for "footings only at owner[']s risk," with $400,000 listed as the cost of construction. Building Department plan review logs show that plumbing subcode review was approved on November 21, 2003; building subcode review was approved on April 15, 2004; and fire and electric subcode review was approved on May 18, 2004.
In June 2004, the building was about eighty percent completed. On October 26, 2004, defendant received condominium certification from the Department of Community Affairs allowing for the sale of five units at 1501 Palisade Avenue. The dental office was completed with dental chairs, a phone line, special hookups, an intercom system, piping, bathrooms, and a handicapped ramp.
The Department of Environmental Protection gave plaintiff approval for the school construction project some time in the summer of 2004. On September 10, 2004, plaintiff made a formal, written offer of $326,000 to defendant for 1501 Palisade Avenue (called the "notice of intent to acquire"), claiming it represented the total fair market value of the property, as appraised by plaintiff's expert on May 26, 2004, with the partially completed building. Defendant rejected the offer as inadequate, but agreed to halt the final stages of construction in exchange for the SCC filing a condemnation action and updating its appraisal report.
On December 1, 2004, plaintiff filed a verified complaint against defendant and four other entities appearing to have an interest in the property: two apparent holders of mortgages, an assignee/holder of a tax sale certificate, and Union City. Plaintiff sought judgment that it was authorized to acquire the property being condemned, and also sought an order appointing commissioners to fix the compensation to be paid.
On December 2, 2004, an order to show cause was issued as to why judgment should not be rendered appointing three disinterested commissioners to fix the just compensation to be paid for taking of the property. On December 17, 2004, plaintiff filed a declaration of taking and deposited $326,000, the amount it estimated was the value of the property, with the court. On January 7, 2005, defendant was authorized to withdraw the estimated value of the property that had been deposited.
Defendant's appraiser issued a report on February 1, 2005, setting value of the property as of November 10, 2004, at $2,250,000. Plaintiff reappraised the property to determine value on the date the complaint was filed, determining that it *672 was $1,480,000. See N.J.S.A. 20:3-30. Plaintiff deposited that amount, less $326,000 already paid to defendant, with the court on February 4, 2005. On February 14, 2005, a final judgment adjudicating SCC's authority to condemn the Lopez property and appointing commissioners was entered. On February 15, 2005, defendant moved to withdraw the deposited funds ($1,154,000, plus interest), and on March 4, 2005, an order for the withdrawal was issued. On March 10, 2005, the condemnation complaint was dismissed without prejudice, so the case would proceed to a hearing before the commissioners.
On February 26, 2006, plaintiff moved to exclude value evidence of zoning approvals and related improvements to the property for purposes of determining just compensation, arguing bad faith on defendant's part. That motion was denied for want of jurisdiction by order of May 8, 2006, determining that a plenary hearing was necessary. After the parties agreed to waive a commissioner hearing and proceed directly to a jury trial, on February 28, 2007, an order was entered vacating the appointment of commissioners.
Thereafter, defendant filed an in limine motion, seeking to exclude evidence relating to the Zoning Board process and the validity of the variance approvals issued for the property. The Law Division judge, in an order of August 23, 2007, granted the motion in part and denied it in part. The order precluded plaintiff from attacking the validity of Zoning Board approvals and the Zoning Board resolution pertaining to this property,[5] but allowed plaintiff to present evidence as to whether defendant sought the approvals and made the subsequent improvements to the property for the sole purpose of enhancing the condemnation award, and whether defendant's actions constituted bad faith. See State by Comm'r of Transp. v. F & J P'ship, 250 N.J.Super. 19, 26-27, 593 A.2d 352 (App. Div.1991).
Plaintiff then re-filed its original in limine motion, seeking to exclude evidence of the value of the improvements to the property and zoning approvals for purposes of determining just compensation. After four days of hearings, the judge rendered an oral decision and order of March 12, 2008, denying plaintiff's motion, finding that plaintiff failed to demonstrate bad faith on defendant's part, and noting, in part, that "[a]t no time did the State prior to the notice of intent indicate in any way that it was going to use this site, that it was going to select this site when in fact other sites had been considered and rejected." The judge further concluded that whether the Zoning Board should have granted approval, and whether there was any collusion or inappropriate behavior by the Zoning Board or other officials, were not issues properly before the court. The matter was then set for trial to determine the issue of valuation.
As noted, following entry of this order, the parties negotiated a settlement, later embodied in a Consent Order for Final Judgment, resolving the issue of just compensation at $1,825,000, but preserving plaintiff's right to appeal the Law Division's evidentiary rulings.[6]
*673 Although this appeal is taken from the April 25, 2008 consent order "for final judgment[,]" it is directed at the evidentiary rulings allowing proof of the value of improvements to the property and zoning approvals to determine just compensation and excluding evidence collaterally attacking the validity of those municipal approvals. Those rulings, however, did not effectively resolve plaintiff's action altogether. On the contrary, the critical factual issue of valuation of the condemned property remained for the jury to determine. As such, the threshold issue presented by this appeal is whether the April 25, 2008 consent judgment is appealable.
It is well-settled that interlocutory orders may be challenged when final judgment is entered, and to be appealable, as of right, a matter must be resolved in the trial court as to all issues and all parties. Pressler, Current N.J. Court Rules, comment 2.2.2 on R. 2:2-3 (2010) (citing e.g. Parker v. City of Trenton, 382 N.J.Super. 454, 457, 889 A.2d 1079 (App. Div.2006)). See also Grow Co. v. Chokshi, 403 N.J.Super. 443, 959 A.2d 252 (App.Div. 2008); Mango v. Pierce-Coombs, 370 N.J.Super. 239, 245 n. 1, 851 A.2d 62 (App. Div.2004); Caggiano v. Fontoura, 354 N.J.Super. 111, 123, 804 A.2d 1193 (App. Div.2002). As we stated in Janicky v. Point Bay Fuel, Inc., 396 N.J.Super. 545, 935 A.2d 803 (App.Div.2007) (Janicky I):
Under R. 2:2-3(a)(1), an appeal as of right may be taken to the Appellate Division only from a "final judgment." To be a final judgment, an order generally must "dispose of all claims against all parties." "This rule, commonly referred to as the final judgment rule, reflects the view that `piecemeal [appellate] reviews, ordinarily, are [an] anathema to our practice.'"
[Id. at 549-50, 935 A.2d 803 (internal citations omitted).]
It is equally clear than an "order. . . consented to by the attorneys for each party . . . is . . . not appealable." Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406, cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950); see also Pemberton v. Pemberton, 41 N.J. Eq. 349, 7 A. 642 (E. & A. 1886); Janicky v. Point Bay Fuel, Inc., 410 N.J.Super. 203, 207, 981 A.2d 96 (App.Div.2009) (Janicky II); O'Loughlin v. Nat'l Cmty. Bank, 338 N.J.Super. 592, 602, 770 A.2d 1185 (App. Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001); DeAngelis v. Rose, 320 N.J.Super. 263, 281, 727 A.2d 61 (App.Div.1999). This is because the rule allowing an appeal as of right from a final judgment contemplates a judgment entered involuntarily against the losing party. See Cooper Med. Ctr. v. Boyd, 179 N.J.Super. 53, 56, 430 A.2d 261 (App.Div.1981). Thus,
[a] party may not seek appellate review of an adverse interlocutory order without seeking relief from the outcome of the litigation as embodied in the judgment. A litigant satisfied with the judgment cannot have an advisory appellate evaluation of an alleged interlocutory error.
[Magill v. Casel, 238 N.J.Super. 57, 62, 568 A.2d 1221 (App.Div.1990).]
Even where the so-called consent final judgment expresses a party's desire to preserve appellate review, the practice is disapproved of because it preempts the appellate court's authority to decide whether to hear an interlocutory appeal and it "`foist[s] jurisdiction'" upon the appellate court. Caggiano, supra, 354 N.J.Super. at 124, 804 A.2d 1193 (quoting CPC Int'l, Inc. v. Hartford Accident & Indem. Co., 316 N.J.Super. 351, 366, 720 A.2d 408 (App.Div.1998), certif. denied, 158 N.J. 73, 726 A.2d 937 (1999)). Indeed, simply "`[b]y saying that he reserved the right to appeal, the plaintiff cannot thereby *674 make appealable an order otherwise unappealable.'" Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir.1996) (quoting Evans v. Calmar S.S. Co., 534 F.2d 519, 522 (2d Cir.1976)).
There is, however, an exception to this general rule against appealability where parties to a consent judgment reserve the right to appeal an interlocutory order "by providing that the judgment would be vacated if the interlocutory order were reversed on appeal[.]" Janicky II, supra, 410 N.J.Super. at 207, 981 A.2d 96. See also Mt. Hope Dev. Assocs. v. Mt. Hope Waterpower Project, L.P., 154 N.J. 141, 149, 712 A.2d 180 (1998); Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J.Super. 299, 307, 942 A.2d 21 (App. Div.), certif. denied, 195 N.J. 521, 950 A.2d 907 (2008); Arias v. Figueroa, 395 N.J.Super. 623, 627, 930 A.2d 472 (App.Div.), certif. denied, 193 N.J. 223, 936 A.2d 969 (2007); Pressler, Current N.J. Court Rules, comment 2.2.3 on R. 2:2-3 (2010) ("If, however, the consent judgment reserves a single issue for appeal, the settlement of all other issues will not preclude appeal of the trial court's order on the reserved issue.").
Here, although the consent judgment does not expressly provide that the judgment would be vacated if the interlocutory orders at issue were reversed on appeal, such a proviso is implicit in the consent final judgment and no party argues otherwise. Indeed, defendant acknowledges that should we reverse the evidentiary rulings and remand, then SCC would have the opportunity to potentially recover the funds it already paid out and which defendant has withdrawn. See N.J.S.A. 20:3-23. In other words, defendant would not be entitled to retain the approximately $1.4 million he already withdrew if unsuccessful on this appeal. Moreover, the balance of the funds  $325,000  remains on deposit with the court and awaits resolution of this dispute on appeal. Consequently, unlike the plaintiffs in Janicky II, supra, who were entitled to retain the amount awarded regardless of the outcome of the appeal because the consent judgment did not provide otherwise, 410 N.J.Super. at 207, 981 A.2d 96, here, the parties have an economic stake in a ruling by this court as to the propriety of the trial court's evidentiary rulings. In light of the pecuniary interest affected by the judgment in question, there exists a justiciable controversy between the parties and our resolution, therefore, will not simply amount to an advisory opinion. See Howard Sav. Inst. v. Peep, 34 N.J. 494, 499, 170 A.2d 39 (1961); Janicky II, supra, 410 N.J.Super. at 208, 981 A.2d 96; see also N.J. Ass'n for Retarded Citizens v. N.J. Dep't of Human Servs., 89 N.J. 234, 241, 445 A.2d 704 (1982).
Having found the consent judgment appealable, we proceed to address the issues raised. Plaintiff's essential challenge is to evidentiary rulings of the trial court on the issue of valuation, which is pivotal in a takings case. Indeed, the United States and New Jersey Constitutions provide that when private property is taken by the government for public use, the government must pay just compensation. U.S. Const. amend. V; N.J. Const. art. I, ¶ 20. The object of an eminent domain award is to compensate the owner for loss of that property. State, by State Highway Comm'r v. Gallant, 42 N.J. 583, 587, 202 A.2d 401 (1964). Just compensation "`implies full indemnity to the owner.'" State, by Comm'r of Transp. v. William G. Rohrer, Inc., 80 N.J. 462, 467, 404 A.2d 29 (1979) (quoting 4 Nichols on Eminent Domain § 12.21 at 12-86.1 (3d ed.1978)). It is the property's fair market value on the date of the taking that establishes the general measure of just compensation. *675 N.J.S.A. 20:3-30. Fair market value is "determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." State, by Comm'r of Transp. v. Silver, 92 N.J. 507, 513, 457 A.2d 463 (1983).
Equally clear is that a trial judge's decisions about the admission or exclusion of evidence are discretionary. Benevenga v. Digregorio, 325 N.J.Super. 27, 32, 737 A.2d 696 (App.Div.1999), certif. denied, 163 N.J. 79, 747 A.2d 287 (2000). In fact, "whether to admit evidence of value in a condemnation case is `liberally entrusted to the sound discretion of the trial judge.'" State, by Comm'r of Transp. v. Caoili, 262 N.J.Super. 591, 595, 621 A.2d 546 (App.Div.1993) (quoting N.J. Highway Auth. v. Rudd, 36 N.J.Super. 1, 3, 114 A.2d 721 (App.Div.1955)), aff'd, 135 N.J. 252, 639 A.2d 275 (1994). Thus, such exercises of discretion "are entitled to respectful review under an abuse of discretion standard." Serenity Contracting Group, Inc. v. Borough of Fort Lee, 306 N.J.Super. 151, 157, 703 A.2d 352 (App. Div.1997), certif. denied, 153 N.J. 214, 708 A.2d 65 (1998). Measured by this standard, we find no abuse of discretion in the trial court's evidentiary rulings.
Plaintiff argues, to the contrary, that the value of defendant's improvements should have been excluded from the "just compensation" determination because defendant received plaintiff's NOI and failed to disclose the receipt to the Zoning Board. We reject this argument as unfounded. The NOI letter in itself was not sufficient to convey an imminent intent to take so as to trigger a duty either to disclose or abandon development.
In Far-Gold Constr. Co. v. Borough of Chatham, 141 N.J.Super. 164, 169, 357 A.2d 765 (App.Div.1976), we noted that a borough's adoption of resolutions expressing the desire to acquire a property "for park purposes and authorizing applications for state and federal funds with which to accomplish that . . . result had no legal impact on the ownership, possession or use of the . . . tract." We explained: "No option was created thereby nor did it result in an actual, substantial destruction of beneficial use. Those holding an interest in the property were as free to deal with or dispose of it as they were before the resolutions were adopted." Ibid.
In Rieder v. State, Dep't of Transp., 221 N.J.Super. 547, 555-56, 535 A.2d 512 (App. Div.1987), we held similarly:
The object of the filing is to accord fair "notice to all persons of the system of highways proposed to be established by subsequent proceedings of condemnation." Bauman v. Ross, 167 U.S. 548, 597, 17 S.Ct. 966, 985, 42 L.Ed. 270, 291 (1897). The filing itself "does not restrict in any way the use or improvement of lands by their owners before the commencement of proceedings for condemnation. . ., nor does it limit the damages to be awarded [in the event of] such proceedings." Ibid.

So too, in Kingston E. Realty Co. v. State, 133 N.J.Super. 234, 240, 336 A.2d 40 (App. Div.1975), we held that a property owner may continue to utilize and develop its property even though it is aware of plans for public acquisition, and noted that "[t]he mere plotting and planning in anticipation of condemnation without any actual physical appropriation or interference does not constitute a taking. . . ." Id. at 239, 336 A.2d 40.
Indeed, this principle was recognized as early as 1873 in State v. Carragan, 36 N.J.L. 52, 54 (Sup.Ct.1872), where the court held that a property owner was entitled to compensation for improvements erected in the right of way of a proposed future street because the planned public *676 acquisition was uncertain when the improvements were erected. Significant, however, for present purposes, the court also stated that "[i]f the improvements should be made in bad faith, with intent to throw an undue burthen on the public, another element would enter into the consideration of the question, which might perhaps produce a different result." Ibid.
Thus, in F & J P'ship, supra, 250 N.J.Super. at 26, 593 A.2d 352, we upheld the exclusion of evidence of zoning approvals for a condemned property based on findings that the property owner had knowledge of an impending condemnation, and with that knowledge, obtained the approvals for the sole purpose of enhancing the condemnation award. We concluded that the trial court was correct to exclude evidence of value based on those approvals because the improvements were made in bad faith. Id. at 27, 593 A.2d 352.
The California Court of Appeals also drew the same distinction in Escondido Union Sch. Dist. v. Casa Sueños De Oro, Inc., 129 Cal.App.4th 944, 29 Cal.Rptr.3d 89, 106 (2005). In holding the cut-off date for work on a compensable improvement when the property owner gains knowledge of impending condemnation proceedings to be the day the owner is served with the condemnation complaint, the court explained:
[T]he plans of a governmental agency to condemn land for a public use often are delayed or do not come to fruition. Therefore, requiring property owners to stop all work on a project as soon as they learn that a governmental agency may possibly condemn their land does not strike us as just or fair. Absent bad faith, such a restriction on a property owner's use of his or her land based on a mere possibility of government action would be an undue deprivation of property rights.
[Id. at 106-07 (emphasis added).]
The court stated that the applicable standard is whether the property owner acted in bad faith, that is, "conduct that is not consistent with `the natural, ordinary, and legitimate use of real property,' but rather is conduct undertaken `for the sole purpose of enhancing the damages to be recovered in an eminent domain action.'" Id. at 107 (quoting State ex rel. Herman v. Schaffer, 110 Ariz. 91, 515 P.2d 593, 600 (1973)). Indeed, "[g]ood faith has been equated with what an ordinarily prudent businessman would do under similar circumstances, and with the natural, ordinary, and legitimate use of the property." Annotation, Eminent Domain: Recovery of Value of Improvements Made with Knowledge of Impending Condemnation, 98 A.L.R.3d 504, 517-18 (1980) (footnotes omitted). One commentator has stated:
[T]here comes a time when a condemnee should not be able to improve his or her property and receive compensation from the condemnor for such improvements. If this were not the case, an unscrupulous owner could improve the property for the sole purpose of increasing the compensation due from the condemnor. Such improvements would be made in bad faith and not in the course of an ordinary and legitimate use of the property. Improvements are made in bad faith if they are not made in the natural, ordinary and legitimate use of real property, but are made for the sole purpose of enhancing the damages to be recovered in an eminent domain proceeding.
[4 Nichols on Eminent Domain § 13.12[3] at 13-108 to -109 (3d ed.2002) (footnotes omitted).]
Here, the trial judge's evidentiary ruling not to exclude proof of the value of the property's improvement was in accordance with relevant law and her predicate findings of lack of bad faith were supported by *677 sufficient credible evidence in the record. We therefore perceive no error in the court's determination.
Nor was it error to disallow the entire transcript of the Zoning Board hearing into evidence. Significantly, the judge did not exclude all evidence of conduct before the Zoning Board, especially as it related to the applicable standard of whether defendant sought approvals and developed his property for the sole purpose of enhancing the compensation award. In any event, the validity of that proceeding had never been directly and properly challenged. See R. 4:69-1. We, therefore, find no "palpable abuse of discretion" in the court's ruling. Brenman v. Demello, 191 N.J. 18, 31, 921 A.2d 1110 (2007) (citing Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492, 734 A.2d 1147 (1999)).
We also find, under present circumstances, no error in the evidentiary rulings based on defendant's breach of a claimed duty of disclosure. While perhaps a factor in the "bad faith" determination, it is not, in our view, dispositive of the evidentiary issue. Indeed, plaintiff cites no authority compelling disclosure of receipt of a NOI letter to a local zoning board. Here, the NOI letter did not necessarily indicate a taking and plaintiff's formal offer did not occur until well after the Zoning Board proceeding.[7]
The present matter is unlike F & J P'ship, supra, where the Department of Transportation (DOT) sent plans in November 1987 to the engineering firm hired by the principals of F & J showing it intended to acquire five acres of F & J's property for a road-widening project. 250 N.J.Super. at 25, 593 A.2d 352. The trial judge in F & J P'ship found that the principals of F & J "understood after their March 23, 1988 meeting with DOT officials that the property would be condemned." Ibid. Nevertheless, they failed to reveal the anticipated condemnation to the Board of Adjustment at the May 19, 1988 hearing on their site plan application for a hotel and restaurant. Ibid.
While we concluded that the property owners in that case might not have obtained site plan approval if they had made a full and accurate disclosure to the Board of Adjustment, our conclusion rested on the fact that the property owners acted in bad faith. We stated:
[E]ven if F & J had made full disclosure to the Board and obtained site plan approval, evidence of the approval would nevertheless have been inadmissible because the record supports the trial court's finding that F & J's sole purpose in pursuing its application was to enhance the award in the anticipated condemnation action.
[Id. at 29-30, 593 A.2d 352.]
Here, unlike the property owners in F & J P'ship, supra, the proof establishes that defendant had no knowledge, much less confirmation, of any impending taking of his property. The NOI letter, although part of the process in determining whether a taking may be appropriate, hardly connotes imminent or final action since the SCC may very well have decided not to go forward with the condemnation.[8] Indeed, the condemnation complaint in this matter was not filed until fifteen months after *678 receipt of the NOI letter and the Zoning Board approvals. Under present circumstances, given the passage of so much time, the absence of bad faith as found by the motion judge, and its lack of relevance to any of the N.J.S.A. 40:55D-70 criteria for assessing whether variances should issue, we agree with the Law Division that no adverse consequence befalls defendant for not disclosing the NOI letter to the Zoning Board.
Affirmed.
NOTES
[1] The SCC is now known as New Jersey Schools Development Authority.
[2] Abbott v. Burke, 153 N.J. 480, 710 A.2d 450 (1998).
[3] Plaintiff's senior project officer testified that an NOI letter is used to introduce homeowners to the taking process. It officially and formally informs the owner that plaintiff is considering purchasing the property through eminent domain, although it does not always result in acquisition of the property.
[4] According to Joseph Layton, a licensed professional planner, defendant required ten variances for the building and opined that this was not a normal course for pursuing an application.
[5] This ruling also precluded plaintiff from presenting any conspiracy theories involving Union City officials or Zoning Board members.
[6] The consent order also called for SCC's Board of Directors to approve the settlement amount and to deposit $345,000  which represented the balance of funds owed to defendant  into the Superior Court Trust Fund Unit. In June 2008, SCC's Board approved the settlement amount and the funds were deposited into court where they await resolution of this appeal.
[7] In fact, the Union City Board of Education first authorized defendant's property for part of the school project three months after the Zoning Board hearing, and after construction commenced in November 2003.
[8] As a postscript, we note that on April 26, 2007, the SCC abandoned its efforts to construct the Columbus School project on the subject property due to a lack of funding, and proceeded to demolish defendant's newly erected building thereon.