NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3417, 09-3558
_____

VIKING YACHT CO., INC., ET AL.,

Appellants/Cross-Appellees,

v.

COMPOSITE ONE LLC, ET AL.,

Appellees/Cross-Appellants.

_____

Appeal from the United States District Court
for the District of New Jersey
No. 1:05-cv-00538
District Judge: Honorable Joseph E. Irenas
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 14, 2010

Before: BARRY and ROTH, <u>Circuit Judges</u>, and
DALZELL[*], <u>District Judge</u>

(Opinion Filed: July 1, 2010)

_____

[*] Honorable Stewart Dalzell, United States District Judge for the Eastern District
of Pennsylvania, sitting by designation.

_____

OPINION

_____

DALZELL, <u>District Judge</u>.

Plaintiffs brought this diversity action sounding in consumer fraud and the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq. ("CFA"), alleging that the cracking of defendants' gel coat had caused them damages. After disposing of two sets of motions for summary judgment, the District Court was able to resolve all issues except the question of whether defendants had breached their express warranty. The case went to trial on that one question and the jury found in favor of defendants. For the following reasons, we will affirm.

## I. **FACTS AND PROCEDURAL POSTURE**

Because we write solely for the parties, we discuss only those facts relevant to our analysis.

This appeal involves the sale and subsequent cracking of gel coat used in manufacturing yachts. Gel coat, the outer layer of a vessel, functions as a cosmetic finish and barrier to prevent water and other materials from damaging the ship. Appellee/Cross Appellant Cook Composites and Polymers (who, in addition to Appellees/Cross Appellants Curran Composites, Inc., C Two LLC, Total Composites, Inc., comprise

2

"CCP" or "defendants") manufactures gel coat, which is distributed by Composites One.[1]

Plaintiffs-Appellants Viking Yacht Co. ("Viking") and Post Marine Company, Inc., ("Post") (collectively, "plaintiffs") manufacture recreational motor yachts and bought the 953 Series gel coat ("953 Series") from Composite One. In the underlying action, plaintiffs alleged that CCP engaged in deceptive practices and breached various warranties.

After the close of fact discovery, the parties filed motions for summary judgment. Plaintiffs and CCP both sought summary judgment on the express warranty and New Jersey CFA claims, among other things. On July 26, 2007, the District Court found that CCP had made an express warranty, but that it was "vague." Viking Yacht Co. v. Composites One LLC, 496 F.Supp.2d 462, 470 (D.N.J. 2007). The District Court concluded that CCP's disclaimer was "ineffective" to the extent that it was inconsistent with the promise of improved flexibility. Id. at 476. It also found that the record had not been developed enough at that time to determine whether CCP had violated the CFA with regard to its alleged misrepresentations and omissions, and denied CCP's motion for summary judgment with regard to plaintiffs' "sham" warranty claim because there was no evidence of substantial aggravating circumstances. Id. at 475-76.

CCP filed a motion for clarification seeking enforcement of the limitation of

---

[1] Composite One is no longer a party to this action and was dismissed from the underlying case on February 14, 2007. (Appellees' Br. at 1.)

3

remedies and exclusion of damages, which defendants contended limited plaintiffs'

remedies to replacement of the gel coat or refund of the purchase price and excluded

other remedies, including incidental and consequential damages.    The District Court

denied that motion on September 18, 2007, finding that CCP's remedies limitations did

not apply to Viking's claims, that CCP's limited remedies provision failed of its essential

purpose, and that the exclusion of consequential damages was unconscionable.  Viking

Yacht Co. v. Composites One LLC, No. 05-538, 2007 WL 2746713, at *6-7 (D.N.J. Sept.

18, 2007).

After the close of expert witness discovery, the District Court considered another

round of motions for summary judgment.  Plaintiffs again sought summary judgment on

their breach of express warranty claim and on the remaining CFA claim.  On June 2,

2009, the District Court granted CCP's motion for summary judgment on plaintiffs' CFA

claim because the solicitation materials were never "actually false," and because there

was no evidence that CCP knew that the gel coat would degrade over time.  Viking

Yacht Co. v. Composites One LLC, 622 F.Supp.2d 198, 205-06 (D.N.J. 2009).  The Court

allowed the express warranty claim to proceed to trial.

On July 24, 2009, a jury found that CCP had not breached its express warranty and

the Court entered its amended judgment on July 29, 2009.  Plaintiffs timely filed this

appeal on August 14, 2009, and CCP cross-appealed on August 28, 2009.

## II.  STANDARDS OF REVIEW

4

We have jurisdiction over this appeal under 18 U.S.C. § 1291.  We review summary judgment decisions de novo.  Lighthouse Inst. For Evangelism, Inc. v. City of Long Branch, 510 F.3d 253, 260 (3d Cir. 2007)(citing Gottshall v. Consol. Rail Corp., 56 F.3d 530, 533 (3d Cir. 1995)).  We review a summary judgment decision under the same standard the District Court applied and affirm the order if the record reveals there are "no genuine issues of material fact and the movant is entitled to judgment as a matter of law."  Id. (citing Fed. R. Civ. P. 56(c)).  This also means that we must construe all facts and inferences "in a light most favorable to...the non-moving party."  Gottshall, 56 F.3d at 533 (citing Erie Telecomm. v. Erie, 853 F.2d 1084, 1093 (3d Cir. 1988)); Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986).

We review claims of error in jury instructions for abuse of discretion, unless the instructions misstate the applicable law, in which case review is plenary.  United States v. Jimenez, 513 F.3d 62, 74 (3d Cir. 2008).  CCP claims that plaintiffs did not timely object to one of the jury instructions they now dispute.  Where a party has failed to object timely to an instruction, we review for plain error and may reverse only if the error was fundamental and highly prejudicial.  Cooper Distrib. Co. v. Amana Refrigeration, Inc., 180 F.3d 542, 549 (3d Cir. 1999).

### III.  ANALYSIS OF APPEAL

Plaintiffs present three issues on appeal.  First, they claim that the District Court applied the wrong standard when it dismissed their CFA claim on a motion for summary

5

judgment because under New Jersey law literal truth is not a defense to a CFA claim premised on deceptive acts and unconscionable commercial practices. Second, they assert that the District Court erred in dismissing plaintiffs' sham warranty CFA claim on a motion for summary judgment on the basis that there were no "substantial aggravating factors" present that would permit recovery under the CFA. Lastly, they contend that the District Court incorrectly instructed the jury on the law when it instructed it that, under New Jersey's adoption of the Uniform Commercial Code and under the CFA it could consider a disclaimer of an express warranty for the product and limit the duration of the express warranty to the date of delivery, after finding as a matter of law that the disclaimer was improper.

## A. Deceptive Acts and Unconscionable Commercial Practices

Plaintiffs appeal the District Court's ruling on their claim that CCP violated the CFA by affirmatively distributing misleading test results that implied that the warranty of "improved flexibility" had scientific support. Viking, 622 F.Supp.2d at 205. The District Court granted summary judgment for CCP on June 2, 2009, dismissing plaintiffs' CFA claim related to the alleged deceptive marketing practices that CCP used to sell the 953 Series. The District Court reasoned that there was no "affirmative misrepresentation" by CCP to support a CFA claim because the representations based on the MB-295 test results "were never actually false." Id. The District Court held that "the only affirmative representation made to Plaintiffs was that the 953 Series gel coat had greater elongation

6

than the 952 Series at the time it was tested. CCP also clearly disclosed the basis for its representation." Id. (internal citations omitted). The District Court pointed out that the tests had been run at room temperature. Id. at 205 n.15. The District Court also granted CCP's motion for summary judgment with regard to omissions, explaining that under the CFA claims based upon omissions required proof of intent to deceive, which was absent. Id. at 205-06.

Plaintiffs argue that literal truth is not a defense to an alleged CFA violation based on unconscionable commercial practices and deceptive acts and that the District Court applied the wrong standard. They claim that CCP engaged in deceptive and unconscionable practices in violation of the CFA when it solicited gel coat sales using misleading representations about the product's "improved flexibility and weathering characteristics" and distributed product test results without disclosing that the results were not predictive of the gel coat's performance, nor intended to be relied upon by consumers.

In New Jersey, consumer fraud may consist of either affirmative acts or acts of omission. Ji v. Palmer, 755 A.2d 1221, 1227 (N.J. Super. Ct. App. Div. 2000). To prove consumer fraud by omission a party must prove scienter, but "one who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive." Ji, 755 A.2d at 1227 (citing Gennari v. Weichert Co. Realtors, 691 A.2d 350, 365 (N.J. 1997)). Under the CFA, there are six types of affirmative acts that are deemed unlawful: unconscionable commercial

7

practices, acts of deception, fraud, false pretenses, false promises, and affirmative misrepresentation. N.J. Stat. Ann. § 56:8-2. "[W]hen a plaintiff's claim is that there was an affirmative act such as fraud or deception, it is not necessary that plaintiff show either defendant's knowledge or intent or that the misrepresentation was of a material fact." Leon v. Rite Aid Corp., 774 A.2d 674, 678 (N.J. Super. Ct. App. Div. 2001).

Whether the representation was false is relevant to whether it was a misrepresentation. As the court held in Ji, "the [representations], while material to the transaction, were not false in fact." Ji, 755 A.2d at 1227. An affirmative misrepresentation violative of the CFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Id. at 1228 (quoting Gennari v. Weichert Co. Realtors, 672 A.2d 1190 (N.J. Super. Ct. App. Div. 1996), aff'd, 691 A.2d 350 (N.J. 1997))(emphasis added).

Plaintiffs concede that CCP's gel coat testing, at the time that it was done, accurately reported that the 953 Series was more flexible than the 952 Series, which is the only representation CCP made with regard to the test. (A3912.) The District Court was correct that the statement CCP made was not false, and therefore it could not have been an affirmative misrepresentation.

Plaintiffs also argue, however, that CCP engaged in unconscionable business practices and deceptive acts, but their argument hinges on the fact that CCP did not disclose that the gel would degrade over time. Plaintiffs claim that

8

> nowhere in PB-58[2] or MB-295[3] is a consumer adequately apprised of CCP's litigation position that the promises of 'improved flexibility,' 'high performance' and 'durab[ility]' do not survive date of delivery of the product and use by the consumer. Similarly, nowhere in MB-295 is the consumer adequately apprised of CCP's litigation position that the elongation test results are not indicative of the future performance of the 953 Series gel coats and were not published to be relied upon by consumers.

(Appellants' br. at 37-38) (emphasis added). What plaintiffs claim are unconscionable business practices are actually claims of omissions. The test may not have been useful to plaintiffs in that it did not help them determine what would happen to the gel coat over time in cold temperatures, but they always knew that the test was conducted at room temperature immediately after the gel was produced. CCP made no claims regarding the long-term flexibility of the gel because they could not -- and certainly did not -- test for that. The District Court is correct that there is no evidence in the record that CCP knew that the 953 Series would degrade, and therefore plaintiffs' CFA claim based on omissions must fail.

In addition, with particular regard to deceptive acts, it is the capacity to mislead that is important. Vagias v. Woodmont Properties, 894 A.2d 68, 71 (N.J. Super. Ct. App. Div. 2006). Plaintiffs rely on Miller v. American Family Publishers, 663 A.2d 643 (N.J. Super. Ct. Ch. Div. 1995), but the reasoning in that case is premised on deliberately confusing representations and does not apply here.

---

[2] The product bulletin.

[3] The test results.

Plaintiffs claim that CCP's solicitation materials had the capacity to mislead the consumer into believing the elongation test results were predictive of the 953 Series' "improved flexibility and weathering characteristics" over time. (Appellants' Br. at 37.) "[F]or a statement not contrary to a specific regulation to constitute a misrepresentation or other act of deceit in violation of the Act, its qualitative content must be so materially deceptive and its capacity to mislead so apparent that proof of intent is unnecessary." Chattin v. Cape May Greene, Inc., 591 A.2d 943, 947 (N.J. 1991)(Stein, J. concurring). But CCP disclosed its testing methods and told its customers to test the product for themselves to make sure it met their individual and specific needs. (A3151, A5527.) Plaintiffs were aware that they could have asked CCP to conduct further tests. (A5543, A5546.) The District Court found, correctly, that although plaintiffs' expert hinted at the existence of a test for flexibility over time, he "failed to identify such a test, or to specify its parameters, cost or availability. He pointed to no literature describing such a test or supporting its practical availability." Viking, 622 F.Supp.2d at 206 n.18. Thus, the statements CCP made are not so deceptive in nature that proof of intent is unnecessary.

We therefore affirm the District Court's ruling on this issue.

## B. The "Sham" Warranty Claim

The plaintiffs argued before the District Court that CCP's use of illusory promises with respect to the sale of the 953 Series -- specifically, with respect to limiting the warranty of the gel's flexibility to the time of delivery -- was an unconscionable business

practice. The District Court found that CCP's warranty as to the flexibility of the gel only through the date of delivery was "ineffective." As a result of this ruling, the District Court found on summary judgment that plaintiffs were merely left with a breach of warranty claim which, without substantial aggravating circumstances, did not rise to the level of an unconscionable business practice. Viking, 496 F.Supp.2d at 476.

Plaintiffs now claim that a sham warranty alone is an unconscionable business practice and cite Mango v. Pierce-Coombs, 851 A.2d 62, 70 (N.J. Super. Ct. App. Div. 1994), in support of their argument. CCP responds that plaintiffs did not make this argument before the District Court and therefore their argument is barred on appeal. We agree that plaintiffs did not raise this issue below. In fact, plaintiffs alleged "far more than a breach of warranty" in their sham warranty CFA claim. (A1532.) This differs markedly from what they allege before us now -- namely, that a sham warranty does not require an allegation of breach of warranty in addition to substantial aggravating circumstances. Under the standard articulated in In re Insurance Brokerage Antitrust Litigation, 579 F.3d 241, 261-62 (3d Cir. 2009), we need not consider issues raised for the first time on appeal. We agree that there were no substantial aggravating circumstances. Thus, we can also agree with the District Court that plaintiffs were left with a breach of warranty claim that does not rise to the level of an unconscionable business practice.

But even if their argument were not barred, it would not be persuasive because

11

Mango applies to the specific circumstances at issue in that case, specifically, that an inspector called upon for the purpose of inspecting a septic tank in advance of a home sale must be able to warrant that the septic tank will still be in good working order when the house is finally sold. Mango held that "[a] home inspection report should reveal and report conditions which may, presently or in the reasonably foreseeable future, cause the consumer substantial inconvenience or require costly repairs or maintenance expense...[e]xculpation clauses are particularly disfavored with professional service contracts." Mango, 851 A.2d at 70 (internal citations and quotation marks omitted). A professional service contract is not at issue here.

As noted earlier, to allege a prima facie claim of an unconscionable business practice based in breach of warranty under New Jersey law, a plaintiff must allege "substantial aggravating circumstances." Given that the District Court found CCP's specifications warranty "ineffective," plaintiffs cannot allege substantial aggravating circumstances in addition to their sham warranty claim. CCP also argues that because the jury found that there was no breach of express warranty, the sham warranty claim is necessarily precluded by that verdict. While this may not always be so -- offering an illusory warranty can be a claim in and of itself -- such a claim must be based on an affirmative misrepresentation, but CCP made none. Thus, the District Court's ruling on this issue will be affirmed.

## C.     The District Court's Jury Instructions Regarding Warranties

12

Plaintiffs claim that the District Court committed reversible error in its jury instructions in two respects. First, plaintiffs argue that when the District Court instructed the jury that CCP "contends that the PB-58 warrants that the 953 series gel coat will have improved flexibility characteristics over 952 series gel coat <u>on the date of delivery</u>" (A7753) (emphasis added), this was contrary to applicable warranty law and inconsistent with the Court's interlocutory ruling that the language in the disclaimer was "ineffective" to disclaim the express warranty of improved flexibility and weathering. This objection was timely.

Second, plaintiffs argue that when the District Court instructed the jury that the disclaimer "does not in it [<u>sic</u>] itself limit the scope in meaning of the warranty quoted," this was misleading and confusing because it implicitly authorized jurors to consider the discredited disclaimer language when determining the scope of the warranty for improved flexibility and weathering. This objection was not timely, (A7615), and thus it must be reviewed for plain error. <u>Cooper</u>, 180 F.3d at 549. We should reverse only if the trial court committed plain error that was "fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice." <u>Id.</u> (quoting <u>Ryder v. Westinghouse Elec. Corp.</u>, 128 F.3d 128, 136 (3d Cir. 1997))(internal quotation marks omitted). The District Court had previously ruled that the disclaimer was ineffective and then instructed the jury that the disclaimer does not limit the scope or meaning of the warranty. The

instruction is consistent with the District Court's previous ruling. There is no evidence of plain error in the District Court's instruction. We therefore reject plaintiffs' contention challenging this particular jury instruction.

With regard to the first objection, which was timely, we exercise plenary review to determine if the jury instruction correctly states the law and, when the instruction passes that threshold requirement, we review a district court's wording of the instruction for an abuse of discretion. Jimenez, 513 F.3d at 74-75. We only find that an instruction is erroneous when we are left with a "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." United States v. Traitz, 871 F.2d 368, 383 (3d Cir. 1989) (internal quotation marks omitted). If we find that the instructions "fairly and adequately" presented the issues in the case without confusing or misleading the jury, we should affirm. Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 79 (3d Cir. 2009). Harmless errors in a jury instruction that do not prejudice the complaining party are not sufficient grounds upon which to vacate a judgment and order a new trial, Watson v. S.E. Penn. Transp. Auth., 207 F.3d 207, 221-22 (3d Cir. 2000), but error in a jury instruction will be harmless only if it is "highly probable" that it did not affect the verdict, Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 411 (3d Cir. 2006).

In its July 26, 2007 opinion, the District Court held that the language in PB-58 (the product bulletin) for the 953 Series gel was a promise made to the buyer that the gel coat would contain certain characteristics, including "improved flexibility and weathering

14

conditions." Viking, 496 F.Supp.2d at 470. Within the same brochure for the product, CCP included a disclaimer that stated that "the products...shall meet Seller's applicable specifications at the time of shipment." (A8285.) The District Court found this disclaimer "ineffective to the extent that it is inconsistent with the promise of improved flexibility found in the PB-58."[4] Viking, 496 F.Supp.2d at 470.

The District Court instructed the jury that it had

> found that the previous [sic] quoted language in the warranty is susceptible to different interpretations, and it is up to you, the jury, to determine the meaning of that warranty. Plaintiffs claim that the warranty was a promise that the 953 series gel coat will maintain "improved flexibility and weathering characteristics" over time and exposure to the elements. CCP denies this and contends that the PB-58 warrants that 953 series gel coat will have improved flexibility characteristics over [the] 952 series gel coat on the date of delivery.

(A7753.) Plaintiffs argue that the District Court's summary of CCP's argument in the jury instructions -- that CCP warranted that "the 953 series gel coat will have improved flexibility characteristics over 952 series gel coat on the date of delivery" -- allowed the jury to accept CCP's theory that the gel coat warranty could expire "on the date of delivery."

Plaintiffs contend that under the U.C.C. a warranty must provide some tangible benefit, and that no tangible benefit was provided to them. The cases plaintiffs cite do

---

[4] The District Court also found, however, that the express warranty was "vague" and left it up to the jury to determine exactly what CCP meant by its express warranty. Viking, 496 F.Supp.2d at 470.

15

not support this position. In <u>Royce Chemical Co. v. Sharples Corp.</u>, 285 F.2d 183, 186 (2d Cir. 1960), the Court of Appeals held that the express warranty that the defendant's machine would be suitable for "this job" applied to plaintiff's use of the machine. That holding is not directly applicable to this case because the product at issue here is first mixed with other products before applied, and does not go directly to "this job", <u>i.e.,</u> directly onto the yachts. The other two cases plaintiffs cite -- <u>Chatlos Sys., Inc. v. Nat'l Cash Register Corp</u>, 479 F. Supp. 738, 743 (D.N.J. 1979), and <u>Elias v. Ungar's Food Prods., Inc.</u>, 252 F.R.D. 233, 250-51 (D.N.J. 2008) -- also do not stand for the proposition that express warranties must provide some tangible benefit.

Plaintiffs argue that the ruling in <u>Mango</u> prohibited CCP from unreasonably limiting "promises about the gel coat's 'high performance' 'durab[ility]' and 'improved flexibility and weathering characteristics,' to the date of delivery." (Appellants' Repl. at 23.) We agree with the District Court that <u>Mango</u> does not apply here because there was no test to determine the longevity of the flexibility of the 953 Series. In <u>Mango</u>, as the District Court noted, a test existed that could measure how long the septic tank would last, and thus <u>Mango</u> is inapplicable. (A7613-A7615.)

While it is true that the District Court's instruction could have made it sound like the jury had an either/or choice, it did not make an incorrect statement of law and merely summarized the parties' arguments. Plaintiffs take it a bit far when they argue that the District Court instructed the jury that "it could accept CCP's alleged defense and find the

16

warranty for 'improved flexibility and weathering' expired on the date of delivery of the product." (Appellants' Br. at 49.) That is not the instruction that the District Court gave. The District Court merely summarized CCP's <u>contention</u> that the PB-58 warrants that the 953 Series gel coat will have improved flexibility characteristics over the 952 Series gel coat on the date of delivery.[5] (A7753.)

Because the District Court did not misstate the law, we review the challenged jury instruction for abuse of discretion. We must determine whether, taken as a whole, the instruction "properly apprised the jury of the issues and the applicable law." <u>Dressler v. Busch Entm't Corp.</u>, 143 F.3d 778, 780 (3d Cir. 1998)(quoting <u>Tigg Corp. v. Dow Corning, Corp.</u>, 962 F.2d 1119, 1123 (3d Cir. 1992)). The trial judge is permitted considerable latitude to summarize and comment upon the evidence, provided that the jury is neither confused nor misled. <u>Am. Home Assur. Co. v. Sunshine Supermarket, Inc.</u>, 753 F.2d 321, 327 (3d Cir. 1985). Here, the District Court's jury instruction summarizing CCP's contention does not leave us with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations. Instead, it seems that the instructions "fairly and adequately" presented the issues in the case without being

---

[5] CCP correctly notes in its brief that plaintiffs' appeal depends on an assumption that the jury adopted CCP's proffered interpretation, which is not necessarily the case. The jury could have reached its verdict in a number of ways -- for example, it could have concluded that the warranty referred to characteristics over some indefinite period of time and the 953 Series conformed to <u>that</u> warranty, or that the 953 Series conformed to the warranty, regardless of the exact measure of its duration. (Appellees' Br. at 39 n.10.)

17

confusing or misleading. Viewing the jury instructions as a whole and in context, we find that the District Court did not abuse its discretion.

## IV. ANALYSIS OF CROSS-APPEAL

CCP in its cross-appeal raises three issues. First, it contends the District Court should have stricken the testimony of plaintiffs' chemistry expert, Dr. Caruthers, which would have entitled CCP to judgment as a matter of law on plaintiffs' claims in the absence of Dr. Caruther's testimony. Second, it argues that plaintiffs should have been precluded from seeking damages for repair costs they voluntarily assumed. Lastly, it claims the District Court erred in its construction and application of the limited remedy and exclusion of consequential and incidental damages.

### A. Standing to Cross-Appeal

Plaintiffs argue that CCP does not have standing to cross-appeal because it prevailed in the District Court. Christopher v. Nestlerode, 240 F. App'x 481, 486 (3d Cir. 2007)("When a prevailing party seeks to appeal an adverse ruling collateral to the judgment in its favor, it may not do so if the collateral ruling was not necessary to the judgment")(citing Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 100 n.6 (1954)); Nat'l Union Fire Ins. Co. v. W. Lake Acad., 548 F.3d 8, 23 (1st Cir. 2008). CCP concedes the first two issues, but offers them as alternative grounds upon which this

Court may affirm the judgment below.[6]

CCP argues that it should be allowed to cross-appeal the third issue because it did not prevail on a collateral issue which was not necessary to support the decree. "[A] prevailing party may appeal 'for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree.'" Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 256 (3d Cir. 2006)(quoting Elec. Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 242 (1939)). The Supreme Court held in Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 334-35 (1980), that, "[i]n an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III."

CCP claims that due to the District Court's ruling on the motion for summary judgment -- which invalidated CCP's standard limited remedy and exclusion of consequential damages provision -- it remains an aggrieved party. CCP asks us to vacate

---

[6] On the first issue, CCP argues that plaintiffs' chemistry expert, Dr. Caruthers, should not have been allowed to testify because his opinion that the cracking was caused by two changes in the formula of the 953 Series compared to the 952 Series (the addition of adipic acid and the "removal" of the UV stabilizer) did not meet the standard of reliability required by Federal Rule of Evidence 702. On the second issue, CCP argues that it had no "reason to know" that, in the event of a breach, plaintiffs would incur the voluntary repair expenses they claimed as damages, and that plaintiffs did not establish a legal obligation to repair the yachts, or that repairs were standard commercial practice in their industry. Naturally, plaintiffs disagree. Because CCP concedes that it does not have standing to assert these arguments, and because we affirm the District Court with regard to plaintiffs' claims, it is unnecessary to delve into these two matters.

the District Court's September 18, 2007 Opinion and Order regarding those terms. CCP

supports its argument with Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211,

217-18 (3d Cir. 2003), which held that

> [w]hen a specific claim becomes moot after the entry of a district
> court's final judgment and prior to the completion of appellate
> review, [the Court of Appeals has] the power to vacate the district
> court's judgment as to that claim....The Munsingwear rule is an
> equitable one that is commonly used ... to prevent a judgment,
> unreviewable because of mootness, from spawning any legal
> consequences.

Id. (citing United States v. Munsingwear, 340 U.S. 36, 39 (1950))(internal citations and

quotation marks omitted).

CCP cites Leonard v. Nationwide Mut. Ins. Co., 499 F.3d 419 (5th Cir. 2007), in

support of its cross-appeal. In Leonard, the Fifth Circuit applied Roper to a case in which

the district court had erroneously interpreted the terms of an insurance contract. The Fifth

Circuit held that because the district court had invalidated a key provision of the

defendant's homeowner's policy as a matter of Mississippi law and superimposed an

entirely different causal matrix for the determination of covered damages than the policy

contemplated, Nationwide was still an aggrieved party, even though plaintiffs had

withdrawn their appeal. CCP's case is similar to Leonard in that the District Court's

ruling invalidated a key provision in CCP's sales documents and exposed CCP to a

20

different quantum of damages.[7]  Under these circumstances, CCP should be permitted to appeal this issue.

We exercise plenary review of a district court's grant of summary judgment, and this review encompasses the District Court's legal determinations regarding contract construction, Jumara v. State Farm Is. Co., 55 F.3d 873, 880-81 (3d Cir. 1995), the ambiguity of contract terms, Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993), and the enforceability of contractual damage limitations under state law, Wartsila NSD North America, Inc. v. Hill Int'l, Inc., 530 F.3d 269, 274 (3d Cir. 2008).

**B.  The Contractual Disclaimer and Limitation of Liability**

---

[7] The other side of this point -- although plaintiffs do not make it in their briefs -- is that CCP's argument may not be ripe for adjudication.  To satisfy Article III's "case or controversy" requirement, an action must present "(1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for reasoned adjudication, and (3) a legal controversy so as to sharpen the issues for judicial resolution." Armstrong World Industries, Inc. by Wolfson v. Adams, 961 F.2d 405, 410 (3d Cir. 1992)(quoting International Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 915 (3d Cir.1987)). The case or controversy requirement must be met regardless of the type of relief sought, including declaratory relief. Id. (citing Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)). "To satisfy the 'ripeness' requirement, a plaintiff in a declaratory judgment action must demonstrate (1) that the probability of future harm is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, (2) that the legal status of the parties will be changed by the declaration, and (3) that the declaratory judgment will have utility (i.e., that it will be of some practical help to the parties)." Algrant v. Evergreen Valley Nurseries Ltd. Partnership, 126 F.3d 178, 189 n.1 (3d Cir. 1997)(citing Travelers Ins. Co. v. Obusek, 72 F.3d 1148, 1154-55 (3d Cir. 1995)). Roper's exception, as amplified in Electrical Fittings and Leonard, counsels in favor of allowing this cross-appeal to proceed.

In its motion for reconsideration, CCP sought enforcement of the limitation of remedies and exclusion of damages in its disclaimer, which it claimed limited plaintiffs' remedies to replacement of the gel coat or refund of the purchase price and excluded other remedies, including incidental and consequential damages. Viking, 2007 WL 2746713, at *4.

The disclaimer reads in relevant part:

> The Buyer's sole and exclusive remedy against Seller shall be for the replacement of the product or refund of the purchase price in the event that a defective condition of the product should be found to exist by Seller. NO OTHER REMEDY (INCLUDING, BUT NOT LIMITED TO, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR LOST PROFITS, LOST SALES, INJURY TO PERSON OR PROPERTY, OR ANY OTHER INCIDENTAL OR CONSEQUENTIAL LOSS) SHALL BE AVAILABLE TO THE BUYER.
>
> The sole purpose of this exclusive remedy shall be to provide Buyer with replacement of the product or refund of the purchase price of the product if any defect in material or workmanship is found to exist. This exclusive remedy shall not be deemed to have failed its essential purpose so long as Seller is willing and able to replace the defective products or refund the purchase price.

(A8285.) The District Court found that the limitation of remedies failed of its essential purpose and that the exclusion of consequential damages provision was unconscionable.

### 1. The Limitation of Remedies Fails of its Essential Purpose

Under the U.C.C., "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." N.J. Stat. Ann. § 12A:2-719. In addition, "under subsection (2), where an apparently fair and reasonable

22

clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." N.J. Stat. Ann. § 12A:2-719(2), cmt. 1; BOC Group, Inc. v. Chevron Chemical Co., LLC, 819 A.2d 431, 438 (N.J. Super. Ct. App. Div. 2003). "[C]ourts generally have concluded that so long as the buyer has the use of substantially defect-free goods, the limited remedy should be given effect. But when the seller is either unwilling or unable to conform the goods to the contract, the remedy does not suffice." Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1085 (3d Cir. 1980).

The District Court held that CCP's remedies limitation failed of its essential purpose not only because the plaintiffs lost the substantial value of their bargain, but also because "(1) the 953 Series' alleged malfunction was latent; and (2) the gel coat was combined into a larger product before use." Viking, 2007 WL 2746713, at *6. The District Court based its reasoning on Garden State Food Distributors, Inc. v. Sperry Rand Corp., Sperry Univac Div., 512 F. Supp. 975, 978 (D.N.J. 1981), in which the court noted that "[l]imited remedies under the U.C.C. have been held to fail of their essential purpose when defects in the goods are latent and not discoverable on reasonable inspection." Id. (citing Marr Enterprises, Inc. v. Lewis Refrigeration Co., 556 F.2d 951, 953 (9th Cir. 1977)). Other courts have used, or have at least referenced, this standard to determine whether a remedies limitation fails of its essential purpose. See, e.g., Fiberglass Component Production, Inc. v. Reichhold Chemicals, Inc., 983 F. Supp. 948, 960 (D.

23

Colo. 1997)("[W]hen goods have latent defects which are not discoverable upon receipt and reasonable inspection, a limitation of remedy to return of the purchase price fails of its essential purpose."); see Lutz Farms v. Asgrow Seed Co., 948 F.2d 638, 646 (10th Cir. 1991); Arias/Root Engineering v. Cincinnati Milacron Marketing Co., No. 90-55661, 1991 WL 190114, at *5 (9th Cir. Sept. 25, 1991).

Most of the cases that CCP cites to refute the District Court's position are distinguishable. Transport Corp. Of Am., Inc. v. International Bus. Mach. Corp., 30 F.3d 953, 959-60 (8th Cir. 1994)(holding that remedy of repair does not fail of its essential purpose when, after a single failure, the system was fully repaired within one day); Hill v. BASF Wyandotte Corp., 696 F.2d 287, 292 (4th Cir. 1982)(holding that the "fail of essential purpose" exception did not apply where the repair or replacement could return the goods to their warranted condition); Bernath v. Potato Services of Michigan, 300 F.Supp.2d 175, 182 (D. Me. 2004)(plaintiff failed to show novel circumstances not contemplated by the parties); Taylor Inv. Corp. v. Weil, 169 F.Supp.2d 1046, 1059 (D. Minn. 2001)(limitation did not deprive one party of a substantial value of its bargain); Southwest Pet Prods., Inc. v. Koch Indus., Inc., 107 F.Supp.2d 1108, 1116 (D. Ariz. 2000)(holding that implicit in the terms of the contract is the presumption that the defect can be cured by replacement or repair....If this presumption fails, either because the product is so deficient it cannot be fixed or the warrantor fails to replace or repair the part, the remedy has failed).

24

Plaintiffs here were deprived of the substantial value of their bargain with CCP. After they had used the gel coat on the yachts and the gel coat cracked, the cost of the gel, about $3,000, was dwarfed by the cost of repairing the ships -- in Post's case it cost $279,000 per ship to repair. For Viking it cost $822,407.59 per ship to repair. Viking, 2007 WL 2746713, at *6. In addition, the defect in the gel was latent. Upon de novo review, the District Court's analysis is correct and the remedies limitation failed of its essential purpose. We need not consider the second part of the District Court's analysis regarding the gel having been combined into another product.

### 2. The Exclusion of Consequential Damages is Unconscionable

CCP argues that the District Court erroneously relied on an opinion of this Court that applied Wisconsin law for the proposition that when an exclusion of consequential damages leaves a buyer with small damages relative to its claimed damages, then the exclusion is unconscionable and a buyer may recover its consequential damages under the U.C.C. (Appellees' Br. at 77.)

In New Jersey, to determine whether a contract clause excluding consequential and incidental damages is valid, a court must review that clause independently from the limitation of remedies and decide whether that limitation fails of its essential purpose. Chatlos Sys., Inc. v. Nat'l Cash Register Corp., 635 F.2d 1081, 1086 (3d Cir. 1980). Chatlos noted, however, that the "remedy's failure of essential purpose, while a discrete question, is not completely irrelevant to the issue of the conscionability of enforcing the

25

consequential damages exclusion." Id. at 1086-87. We narrowed the question in that case to whether it was unconscionable for the buyer to retain the risk of consequential damages upon the failure of the essential purpose of the exclusive limitation of remedies. Id. at 1087.

The District Court here considered the two clauses separately. Citing Chatlos, it noted that New Jersey law separates the analysis of the two. The District Court also considered the fact that the limitation of remedies had failed of its essential purpose and that this was not irrelevant to its analysis of the consequential damages clause. The District Court ultimately found that, all things considered, the exclusion of incidental and consequential damages rendered the available damages unconscionably low. Viking, 2007 WL 2746713, at *7. The District Court did not cite Ragen Corp. v. Kearney & Trecker Corp, 912 F.2d 619, 625 (3d Cir. 1990)(which refers to Wisconsin law) for the proposition that the analysis of a limitation on remedies necessarily leads to the unconscionability of the exclusion of consequential and incidental damages. Rather, the District Court merely cited Ragen for the distinguishable concept that the U.C.C. does not "make giant corporations fair game for either intentional sharp practices or a skewed rule of law," and that when the damages clause provides for unconscionably low damages, the clause is unreasonable. Viking, 2007 WL 2746713, at *7.

CCP claims that unconscionability must be measured at the contract's inception, citing Kearney & Trecker Corp. v. Master Engraving Co., Inc., 527 A.2d 429, 434 n.5

26

(N.J. 1987). But this is not what Kearney holds. There, the New Jersey Supreme Court held that "[w]hether the preclusion of consequential damages should be effective in [any] case depends upon the circumstances involved." Kearney, 527 A.2d at 436. In addition, Kearney found that the U.C.C. does not require the invalidation of an exclusion of consequential damages when limited contractual remedies fail of their essential purpose. But "when the circumstances of the transaction, including the seller's breach, cause the consequential damage exclusion to be inconsistent with the intent and reasonable commercial expectations of the parties, [then the] invalidation of the exclusionary clause would be appropriate under the Code." Id. at 438.

It may still be worth considering the comparison to Chatlos, however, in which the clause was found not to be unconscionable. In Chatlos there was no great discrepancy in the parties' bargaining power or sophistication. That is also true here. In Chatlos the limitation was clearly expressed, so it was not an instance of an ordinary consumer being misled by a disclaimer hidden in a "linguistic maze." Cf. Gladden v. Cadillac Motor Car Division, 416 A.2d 394, 401 (1980). That is also true here. Finally, in Chatlos, the court found that the type of damage claimed came within the realm of expectable losses. "Some disruption of normal business routines, expenditure of employee time, and impairment of efficiency cannot be considered highly unusual or unforeseeable in a faulty computer installation." Chatlos, 635 F.2d at 1087. Similarly here, the parties should have considered the possibility that a defective gel might mean having to replace the gel coat

27

once it had already been applied to the vessels. The only real difference is the raw dollar value of the damages, which go beyond "some disruption of normal business routines" since the boat companies had to replace the gel coat on all of the vessels. In addition, in Kearney the Supreme Court of New Jersey found that "[a]s between commercial parties...the allocation of risks in accordance with their agreement better serves the public interest than an allocation achieved as a matter of policy without reference to that agreement." Kearney, 527 A.2d at 437 (quoting Spring Motors Distribs., Inc. v. Ford Motor Co., 489 A.2d 660, 671 (N.J. 1985)). CCP points out that Viking's and Post's own sales materials also contain nearly identical exclusions of consequential damages. (A5826, A5828.)

Though a close question where, as here, sophisticated businesses are involved, the damages clause would in this case render the damages unconscionably low -- in Post's case by a factor of 93 and in Viking's by a factor of 274. We therefore do not disturb the District Court's calculus on this admittedly difficult point.

### 3. No Contractual Preclusion of Consequential Damages

CCP claims that the District Court made two errors in ruling that the limitation of remedies and exclusion of consequential damages did not apply to breaches of the flexibility warranty: (1) it disregarded the agreed textual interpretation of the parties, and (2) it interpreted the provision in isolation and without reference to the documents as a whole. (Appellees' Br. at 70.)

CCP claims that the District Court should not have sua sponte disregarded the parties' agreed textual interpretation of the remedies. CCP cites Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir. 1993), in support of its point. But Rolls-Royce Motor Cars stands for the proposition that in order for a court "to decide whether a contract is ambiguous, [it] do[es] not simply determine whether, from [its] point of view, the language is clear. Rather, [it] hear[s] the proffer of the parties and determine[s] if there are objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of different meanings." Id. (internal citations and quotation marks omitted). But the District Court did not find that the limitation was ambiguous. Instead, it determined that even if it did interpret the provision in such a way that the limitation would apply to breaches of all the warranties -- and not just to breach of the specifications warranty -- the "limited remedies deprive Plaintiffs of the substantial benefit of their bargains." Viking, 2007 WL 2746713, at *6.

We agree that the disclaimer is not ambiguous and that it dictates that remedies will only be offered in the event that the gel is found to be defective, i.e., when the gel does not meet Seller's specifications. CCP claims that the District Court interpreted the exclusion of consequential damages provision in isolation and without considering the document as a whole, but they cite no cases in support of their point, ultimately arguing that at the very least the provision was ambiguous. We have already agreed with the

29

District Court that the provision was not ambiguous. Under <u>Kennedy v. Westinghouse Elec. Corp</u>., 108 A.2d 409, 413 (N.J. 1954), "[t]he design of the parties to a written contract is to be collected from the instrument as an entirety." The District Court quoted this language after writing, "[i]n interpreting the Disclaimer, the Court must read the limitation of remedies in the context of the section in which it is contained." <u>Viking</u>, 2007 WL 2746713, at *5. The Court cited to <u>Kennedy</u> thereafter, and these two statements therefore can be read together. The instrument as an entirety can be considered while also construing the limitation of remedies in the context of the section in which it is contained.

The District Court then proceeded to consider the disclaimer as a whole and found that it only applied to the specifications warranty because the disclaimer begins, "[t]he products sold hereunder shall meet Seller's applicable specifications at the time of shipment. Seller's specifications may be subject to change at any time without notice to buyer." <u>Viking</u>, 2007 WL 2746713, at *5. The District Court acknowledged that CCP disclaimed all other warranties "<u>if any defect in material or workmanship is found to exist</u>" and provided that the exclusive remedy in the event of a defect is replacement or refund. <u>Id.</u> The District Court found that the disclaimer <u>only</u> applies when the gel does not meet CCP's specifications. The District Court noted that it was uncontested that the gel coat met CCP's specifications. <u>Id.</u> at *6. Thus, absent a breach of the specifications warranty, the incidental and consequential damages available in the event of a defect (but

30

where the gel still met the Seller's specifications) had not been disclaimed.

The disclaimer also states, however, "[n]o other remedy (including, but not limited to, incidental or consequential damages for lost profits, lost sales, injury to person or property, or any other incidental or consequential loss) shall be available to the buyer." (A8285.) CCP argues that this applies to all warranties, not just the specifications warranty.

CCP also contends that well-established usage of trade in the gel coat industry -- where manufacturers limit purchasers' remedies to replacement of gel coat or refund of the purchase price and similarly exclude consequential and incidental damages -- counsels in favor of allowing exclusion of consequential and incidental damages. CCP reports that all other major domestic gel coat manufacturers limit remedies to replacement or refund. Based on the evidence CCP presented, it does appear that this is indeed a common disclaimer in the industry. (A5733-34, A5736.) But those disclaimers may also be disclaiming only the specifications warranties, which is not an issue before us. And CCP cites no cases in support of this point. Thus, the District Court's rulings on the motion for summary judgment should be affirmed on this issue.

## V. CONCLUSION

As neither party has a meritorious legal issue on appeal, we affirm the District Court's orders.

31